

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00416-CR

THE STATE OF TEXAS                                                      STATE

V.

LAURA ANN SWAN                                                      APPELLEE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1273898

----------

## OPINION

----------

The State of Texas appeals the trial court's order granting appellee Laura Ann Swan's motion to suppress the results of a blood test for alcohol. In three points, the State contends that the warrantless, nonconsensual blood draw of appellee that the police conducted under the mandatory language of a Texas statute was not unconstitutional and that even if the blood draw was unconstitutional, evidence related to it should not be suppressed because a

police officer believed that he was acting constitutionally under the statute. We affirm the trial court's suppression order.

**Background Facts**

One early morning in February 2012, Hurst police officer Brian Charnock received information that while traveling on a state highway, a driver was swerving, was increasing and reducing speed, and was otherwise driving recklessly. Officer Charnock was too far away from the location of the driver's vehicle to follow and observe it, so he drove toward the address associated with the vehicle.[1] On the way there, Officer Charnock saw the vehicle he was searching for, which was being driven by appellee. Appellee made a turn without signaling, and Officer Charnock conducted a traffic stop.

When Officer Charnock approached appellee's vehicle, he smelled a strong odor of alcohol. Appellee denied having recently drunk alcohol. Officer Charnock asked appellee to perform field sobriety tests, and she refused. Appellee's refusal to perform the tests made Officer Charnock believe that she was "hiding something." Officer Charnock arrested appellee for failing to present her driver's license, but he also believed that he had probable cause to arrest her for driving while intoxicated (DWI).

---

[1]Officer Charnock received a license plate number from a witness who had seen the vehicle, and Officer Charnock connected that number to an address.

Officer Charnock transported appellee to a jail. While there, he noticed that she had "droopy eyes," and he could still smell alcohol on her.[2] Officer Charnock gave appellee certain warnings and asked her to give a sample of her blood for the testing of alcohol content. She refused. Officer Charnock learned that appellee had two prior convictions for DWI, and he prepared to conduct a search and seizure of her blood under section 724.012 of the transportation code.[3] He took her to an emergency room near the police department, where a sample of her blood was seized. Officer Charnock did not obtain a warrant before seizing the blood sample because he "didn't need the warrant at the time based on the two prior convictions. And timewise, it wouldn't have been expedient."[4]

A Tarrant County grand jury indicted appellee for DWI. The indictment included a paragraph alleging that she had two prior final convictions for DWI.

---

[2]Officer Charnock testified, however, that appellee's speech was not slurred, that she did not have bloodshot or watery eyes, and that she did not "sway very much" when she walked.

[3]*See* Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011) (requiring a police officer to take a specimen of a person's breath or blood if the officer arrests a suspect for DWI, the suspect refuses to give a specimen voluntarily, and the suspect has two or more DWI convictions); *see also id.* § 724.011(a) (West 2011) (stating that if a person is arrested for DWI, the person is "deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration").

[4]Officer Charnock explained that the process of obtaining a warrant—which spans "at least an hour"—risks losing evidence of intoxication "based on time elapsing and dissipation of alcohol in the body."

3

Appellee filed a motion to suppress the results of the blood test. She argued that although the State had searched for and seized her blood under the provisions of section 724.012, the nonconsensual search and seizure were unconstitutional under the United States Supreme Court's *Missouri v. McNeely*[5] decision because they were unsupported by a search warrant or by exigent circumstances that precluded the police from obtaining a warrant.

In response, the State argued that the search and seizure of appellee's blood were reasonable and valid. Specifically, the State contended that section 724.012 mandated the search and seizure of appellee's blood, that the police relied on this statute when seizing the blood, and that the decision in *McNeely* did not invalidate the requirements of the statute. The State asserted in part,

> The concept relied upon in vehicular-intoxication enactments across the country—implied-consent—is a statutory term of art that incorporates Fourth Amendment principles. Pursuant to the Texas implied-consent statutory framework, a defendant's implied consent is valid as a constitutionally sufficient alternative to the warrant preference. Driving on a roadway (and obtaining a license, if applicable) is a privilege, not a right; by doing so, a defendant impliedly consents to providing a sample when suspected of intoxication-related crimes. . . . This statutory framework was promulgated to protect the strong state interest in eradicating drunk driving. It involves a type of consent that can be actual, not simply implied. And it requires a quantum of evidence equal to the constitutional level for seizing a person, a scenario that results in limiting a person's expectation of privacy. When the statute's predicates are fulfilled, the search is narrowly limited, excludes

---

[5]*See* 133 S. Ct. 1552, 1568 (2013) ("We hold that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

significant officer discretion, and seeks a very specific type of evidence that has a direct nexus to the offense committed, similar to a search incident to arrest. For these combined reasons, implied-consent draws are reasonable under the Fourth Amendment; they involve a compilation of factors weighed throughout years of jurisprudence that support warrantless searches and seizures.

. . . .

*McNeely* did not alter application of the Texas implied-consent provisions—statutes which incorporate constitutional protections. When an officer follows the mandate [of the implied-consent provisions], the officer acts within the bounds of constitutional reasonableness.

In its lengthy written response in the trial court, the State also explained that at that time, the Texas Court of Criminal Appeals had not yet "weigh[ed] in" on whether the decision in *McNeely* impacted section 724.012. Finally, the State argued that even if the mandatory blood-draw under section 724.012 was unreasonable, evidence flowing from the blood-draw should not be excluded because the police seized appellee's blood while believing that the statute's requirements were valid and constitutional.

After holding a hearing,[6] the trial court granted appellee's motion to suppress the results of her blood alcohol test. The court found that appellee's detention and arrest were lawful but that the search and seizure of her blood

---

[6]At the hearing, the State represented, "[W]e are not claiming an exigency exist[s] in this situation at all. We are relying on [section 724.012]."

5

were unlawful because they occurred without a warrant, without her consent, and without exigent circumstances. The State brought this interlocutory appeal.[7]

## The Trial Court's Suppression Decision

On appeal, as in the trial court, the State relies on section 724.012 to support the constitutionality of the search and seizure of appellee's blood; the State contends that this appeal "involves the application of Fourth Amendment principles to warrantless, non-consensual, statutorily-mandated blood draws." The State alternatively contends that if section 724.012's mandatory blood-draw provisions did not provide a constitutional basis for the search and seizure of appellee's blood, Officer Charnock's belief in the constitutional application of that provision at the time of the search and seizure precludes suppression of appellee's blood test results. Based on precedential and persuasive authority, we cannot agree with either proposition.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at

---

[7]*See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2015).

6

673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v.*

7

*State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003).

The principal issue raised in this appeal, as discussed by the State in its first and second points, is whether a warrantless, nonconsensual blood draw conducted only under the basis of section 724.012's mandatory provisions (in other words, without exigent circumstances or another established exception to the general requirement of obtaining a search warrant)[8] violates the Fourth Amendment. As the State concedes, both the Texas Court of Criminal Appeals and this court have addressed the merits of this Fourth Amendment issue.

Section 724.012 requires the taking of a specimen of a suspect's breath or blood if the suspect is arrested for DWI, the suspect refuses to give a specimen voluntarily, and the suspect has been twice convicted of DWI. Tex. Transp. Code Ann. § 724.012(b)(3)(B). While section 724.012 requires the taking of a specimen in those circumstances, the section does not expressly authorize the taking to occur without a warrant. *See id.*; *State v. Anderson*, 445 S.W.3d 895, 907 (Tex. App.—Beaumont 2014, no pet.).

In *State v. Villarreal*, the court of criminal appeals held that section 724.012 does not, by itself, form a constitutionally valid alternative to the general Fourth Amendment warrant requirement. No. PD-0306-14, 2014 WL 6734178, at *1,

---

[8]The State concedes that the police must generally obtain a warrant before conducting a search or seizure.

8

*21 (Tex. Crim. App. Nov. 26, 2014).[9] The facts from *Villarreal* are strikingly similar to the facts at issue: the defendant was stopped for a traffic violation and showed signs of intoxication, the defendant refused to perform field sobriety tests or to voluntarily give a blood specimen, the police learned that the defendant had been previously convicted of DWI on several occasions, and the police obtained a blood specimen at a hospital without a warrant while relying on section 724.012. *Id.* at *1–2. The court of criminal appeals, relying in part on principles articulated by the Supreme Court *in McNeely*, held that this blood draw violated the Fourth Amendment. *Id.* The court stated in part,

> In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. Furthermore, of particular relevance to DWI cases, the Supreme Court has recognized that the Fourth Amendment is implicated in that (3) the collection of a suspect's blood invades a substantial privacy interest, and (4) the exigent circumstances exception to the

[9]When the State filed its brief in this appeal, the court of criminal appeals had granted rehearing in *Villarreal*. The State recognized in its brief that the holding in *Villarreal* was contrary to its position in its first and second points, contended that the reasoning supporting the holding was "mistaken," and emphasized that rehearing had been granted. After the submission of this appeal, the court of criminal appeals concluded that its decision to grant rehearing was improvident and denied the motion for rehearing. Although the State argues against the rationale and holding in *Villarreal* at length, we are bound to follow the precedent of the court of criminal appeals. *See White v. State*, 395 S.W.3d 828, 833 (Tex. App.—Fort Worth 2013, no pet.). Thus, we decline to analyze the State's several explicit and implicit challenges to the rationale of *Villarreal* and its ultimate holding that a nonconsensual and warrantless search of a DWI suspect's blood conducted only pursuant to the mandatory-blood-draw and implied-consent provisions in the transportation code violates the Fourth Amendment. 2014 WL 6734178, at *21.

9

search-warrant requirement is not established merely by the natural dissipation of alcohol. . . .

. . . .

The State suggests that a search conducted pursuant to the mandatory-blood-draw provisions—specifically, in this case, the provision applicable to repeat DWI offenders—should be upheld as categorically reasonable under (1) the consent exception, applicable in the form of a prior waiver through implied consent, (2) the automobile exception, (3) the special-needs exception, (4) the search-incident-to-arrest exception, or, alternatively, (5) by treating a blood draw as a seizure instead of a search. . . . [W]e hold that none of these established exceptions to the warrant requirement categorically applies to except the warrantless, nonconsensual testing of a suspect's blood pursuant to the provisions in the Transportation Code. . . .

. . . .

. . . [W]e conclude that the warrantless, nonconsensual testing of a DWI suspect's blood cannot be justified as a reasonable intrusion under any of the State's proffered exceptions to the warrant requirement.

. . . .

. . . [T]he Supreme Court's holding in *McNeely* makes clear that drawing the blood of an individual suspected of DWI falls under the category of cases holding that "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the warrant requirement. . . .

We hold that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. We thus reject the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions can fall under one of the established exceptions to the warrant requirement described above, and we further reject the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test.

*Id.* at *8, *10, *16, *20.

10

Courts of appeals, including this court, have repeatedly applied the holding from *Villarreal* to likewise conclude that a warrantless search and seizure of a defendant's blood purported to be justified only by section 724.012's requirements is unconstitutional. *See, e.g.*, *Burks v. State*, 454 S.W.3d 705, 709 (Tex. App.—Fort Worth 2015, pet. filed) ("Officer Croft relied exclusively on the 'mandatory provisions' of transportation code section 724.012(b)(3)(B) for the warrantless blood draw. Following *Villarreal*, we hold that this warrantless, nonconsensual blood draw . . . violated the Fourth Amendment." (citation omitted)); *see also State v. Palanza*, No. 13-13-00528-CR, 2015 WL 5920257, at *2 (Tex. App.—Corpus Christi Oct. 8, 2015, pet. filed) (mem. op., not designated for publication); *State v. Taylor*, No. 02-14-00456-CR, 2015 WL 4504806, at *3 (Tex. App.—Fort Worth July 23, 2015, pet. filed) (mem. op., not designated for publication) ("[W]e hold again that this warrantless, nonconsensual blood draw conducted pursuant to the mandatory-blood-draw and implied-consent provisions of the Texas Transportation Code violated the Fourth Amendment."); *Perez v. State*, 464 S.W.3d 34, 47 (Tex. App.—Houston [1st Dist.] 2015, pet. filed) (op. on reh'g).

*Villarreal* and these other decisions foreclose the State's argument in its first two points that the nonconsensual and warrantless search and seizure of appellee's blood, which Officer Charnock conducted under section 724.012 and without facts supporting an independent exception to the warrant requirement, did not violate appellee's rights under the Fourth Amendment. *See* 2014 WL

11

6734178, at *21; *Burks*, 454 S.W.3d at 709; *see also Taylor*, 2015 WL 4504806, at *3. We overrule the State's first two points.

In its third point, the State contends,

> When the ink dries on *Villarreal* and future *McNeely* decisions and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2012 pronouncement (if not some even later *McNeely* progeny).

In other words, the State argues that Officer Charnock's good faith in applying what he believed the law to be at the time of the search precludes suppression of the blood test results even if the search and seizure violated appellee's constitutional rights as determined by later decisions.[10]

But as the State recognizes, we have considered and rejected this argument. *Burks*, 454 S.W.3d at 709; *see also Lewis v. State*, No. 02-13-00416-CR, 2015 WL 1119966, at *2 (Tex. App.—Fort Worth Mar. 12, 2015, pet. filed) (mem. op., not designated for publication) ("[An officer's] good-faith belief that the statute authorized the warrantless search does not overcome the exclusionary rule."). Other courts have also rejected the contention. *Greer v. State*, No. 01-14-00033-CR, 2015 WL 6366737, at *3 (Tex. App.—Houston [1st Dist.] Oct. 22,

---

[10]The State cites, in part, article 38.23 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). The State contends that Officer Charnock did not execute the search and seizure in violation of any law as the law was understood at that time.

2015, pet. filed) (mem. op., not designated for publication); *Moore v. State*, No. 11-13-00347-CR, 2015 WL 5192175, at *4 (Tex. App.—Eastland Aug. 21, 2015, pet. filed) (mem. op., not designated for publication) ("The State's final argument is that . . . the Texas exclusionary rule does not apply because Officer Miller followed an existing statute that had not been held unconstitutional when he arranged for the warrantless blood draw. We disagree with the State's contention.").

Based on our precedent and the persuasive authority cited above, and for the reasons expressed within those decisions, we reject the State's argument that the Texas exclusionary rule does not apply in this case. We overrule the State's third point.

## Conclusion

Having overruled all of the State's points, we affirm the trial court's order granting appellee's motion to suppress the results of her blood alcohol test.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

PUBLISH

DELIVERED: January 21, 2016

13