

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00146-CR

JEREMY AARON BONSIGNORE                                   APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1316752D

----------

## OPINION

----------

Appellant Jeremy Aaron Bonsignore filed a motion to suppress the results of a warrantless blood draw. After an evidentiary hearing on the motion, Appellant pled guilty, received a two-year sentence, and appealed from his conviction for felony DWI, complaining of the denial of his motion to suppress.[1]

---

[1]The record contains neither a written order nor an oral ruling denying Appellant's motion to suppress. At the conclusion of the hearing, the trial court simply took the motion under advisement. Both Appellant and the State appear

In his sole point, Appellant contends that the blood draw was taken without his consent and without obtaining a search warrant, in violation of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and *State v. Villarreal*, 475 S.W.3d 784 (Tex. Crim. App. 2014), *petition for cert. filed*, 84 U.S.L.W. 3484 (U.S. Feb. 19, 2016) (No. 15-1063). We reverse and remand for a new trial.

## I.      Evidence and Arguments Presented at the Hearing on Appellant's Motion to Suppress

### A. Testimony

Sergeant Jeremy West was working as a patrol officer for the City of Lake Worth on the night of January 4, 2013. Sergeant West testified that around 1:24 a.m., he noticed in his rearview mirror a vehicle going eighty miles per hour in a forty-mile-per-hour zone. As Sergeant West caught up with the vehicle, the vehicle pulled into a parking lot of a Waffle House restaurant. Sergeant West activated his emergency lights and pulled up behind the parked vehicle.

The driver, Appellant, left the vehicle and walked toward the restaurant. Because Appellant did not appear to be aware he was being pulled over, Sergeant West yelled at him. Appellant turned around, stumbled, lost his

_____

to be proceeding under the assumption Appellant's motion to suppress was denied by implication. We note that the trial court checked that this was a plea-bargain case with written motions filed "and ruled on" before trial in the "Certification of Defendant's Right of Appeal." *See* Tex. R. App. P. 33.1(a)(2)(A); *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006) (holding denial was implied); *but see Evans v. State*, No. 01-13-00593-CR, 2015 WL 1501808, at *4 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015, pet. ref'd) (holding that absent ruling on motion to suppress, issue waived) (mem. op., not designated for publication).

balance slightly, and began walking toward Sergeant West. When Sergeant West spoke with Appellant, he noticed a strong odor of alcohol and described Appellant's eyes as red, watering, and glossy. When Sergeant West asked Appellant for his driver's license and insurance, Appellant admitted not having any insurance. Appellant had difficulty getting his license out of his wallet and moved slowly and deliberately. Sergeant West asked Appellant if he had been drinking, and Appellant answered that he had had four or five mixed drinks at the Crowbar, which was a nearby bar.

Sergeant West then initiated field sobriety testing and began with the horizontal gaze nystagmus test; Appellant showed six clues, which were indicators of possible intoxication. When Sergeant West attempted to have Appellant perform the walk and turn test, Appellant assumed the instruction position, lost his balance, and thereafter refused to perform any more tests. Sergeant West placed Appellant under arrest for the offense of driving while intoxicated. It was 1:49 a.m.

Sergeant West inventoried Appellant's vehicle and then took Appellant to the Lake Worth Police Department. Once there, Sergeant West read Appellant his statutory warnings[2] and attempted to conduct further field sobriety tests, but Appellant refused to comply. After reading Appellant the DIC-24, Sergeant West

---

[2]See Tex. Transp. Code Ann. § 724.015 (West Supp. 2015) ("Information Provided by Officer Before Requesting Specimen").

3

requested both breath and blood specimens, but Appellant refused.[3]  Sergeant West asked his dispatcher to run a criminal history on Appellant, and the dispatcher informed Sergeant West that Appellant had two prior convictions for DWI.  Sergeant West said that information meant he had a felony repetition case, so he instructed Officer Gomez to take Appellant to the hospital for a mandatory blood draw pursuant to section 724.012 of the Texas Transportation Code.  Officer Gomez drove Appellant to JPS Hospital, where a nurse performed a blood draw at 2:55 a.m.

By January 4, 2013, Sergeant West estimated he had obtained around thirty search warrants for blood draws.  Since that date to the time of trial, he had obtained perhaps another twenty warrants for blood draws.  Sergeant West said the Lake Worth Police Department used the LEADRS program.  Sergeant West estimated that it would take anywhere from thirty to forty-five minutes to fill out or input the information required by the LEADRS system.  The Lake Worth Police Department used Fort Worth municipal magistrates to obtain the warrants.  Lake Worth magistrates were not available that night.  Sergeant West faxed their affidavits to the Fort Worth municipal magistrates.  After the magistrate reviewed the affidavit, if the magistrate approved the warrant, the magistrate would fax it

---

[3]The DIC-24 statutory warning form is a standard Texas Department of Public Safety form containing warnings required to be read to individuals arrested for DWI offenses before a peace officer requests a voluntary blood or breath sample.  *See id.*; *State v. Neesley*, 239 S.W.3d 780, 782 (Tex. Crim. App. 2007).  The form read to Appellant was admitted as State's Exhibit 1.

4

back to the Lake Worth Police Department. Sergeant West explained that he would, in turn, fax the warrant to JPS Hospital to the officer who was waiting with the defendant. Once that officer received his fax at JPS Hospital, that officer would have the nurse do the blood draw procedure.

Sergeant West said this was not a no-refusal weekend.[4] When it was not a no-refusal weekend, Sergeant West estimated that from the time of the DWI stop to the time he faxed a warrant to JPS Hospital averaged between two and three hours. The last search warrant for blood he obtained, only two days before he testified, took him three hours to go through the same procedure.

Sergeant West said Officer Gomez was his assist officer. During a traffic investigation, Officer Gomez's primary function was officer safety. After the arrest, Officer Gomez was the one who transported the defendant to the hospital for the blood draw procedure. Consequently, obtaining and executing a blood draw search warrant usually involved two officers. On January 4, 2013, there were three Lake Worth officers on duty. Sergeant West said they "run four officers," but three officers on duty at night was "typical."

---

[4]A no-refusal weekend has been described as a weekend during which a district attorney, a judge, and a nurse are on call to process DWI suspects. *See Fears v. State*, No. 01-14-00773-CR, 2016 WL 1449286, at \*2 (Tex. App.— Houston [1st Dist.] Apr. 12, 2016, pet. filed). It has also been described as a period where magistrates are available to review and sign search warrants in a streamlined manner. *See Burks v. State*, 454 S.W.3d 705, 707 (Tex. App.—Fort Worth 2015, pet. ref'd), *petition for cert. filed*, (U.S. Apr. 26, 2016) (No. 15-1323).

When asked if Appellant's two prior convictions were his only authority for obtaining the blood draw, Sergeant West said that the two prior convictions were the reason he procured the blood draw. Sergeant West acknowledged he did not have and did not attempt to get a search warrant. He acknowledged Appellant did not give his consent to have his blood drawn. Sergeant West acknowledged that his authority for the blood draw without a warrant or consent was the mandatory blood draw statute.

**B. Argument**

During arguments in the trial court, the State acknowledged that *McNeely* held that there was no *per se* exception to the requirement of a warrant based solely on dissipation of alcohol over time but pointed out *McNeely* also recognized cases would arise in which anticipated delays in obtaining a warrant would justify the failure to obtain a warrant. The State maintained that this was such a case. In other words, the State argued that the dissipation of alcohol from the defendant's system plus other exigent circumstances excused the requirement of a warrant. The State pointed out that, in addition to the gradual destruction of evidence over time, the offense was serious—a felony DWI. The State also noted that it was a small police department and that pursuing a warrant would have occupied two out the three available officers; it then pointed to Sergeant West's testimony that the most recent warrant he had obtained had taken three hours; and it concluded that for a small police department, it just took time and was "burdensome."

6

## II. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez*, 195 S.W.3d at 108–09; *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### III. Discussion

#### A. The Mandatory Draw Statute

Section 724.012 of the transportation code requires the taking of a specimen of a suspect's breath or blood if the suspect is arrested for DWI, the suspect refuses to give a specimen voluntarily, and the suspect has been twice

convicted of DWI. Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011). In relevant part, the statute provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> . . . .
>
> > (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
> >
> > . . . .
> >
> > > (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, . . . .

*Id.* Although section 724.012 requires the taking of a specimen in those circumstances, it does not expressly authorize taking the specimen without a warrant. *See State v. Swan*, 483 S.W.3d 760, 764 (Tex. App.—Fort Worth 2016, no pet.).[5]

---

[5]Under the implied consent statute, a person arrested for driving while intoxicated "is deemed to have consented" to the taking of a blood sample, and the "deemed" consent may not be withdrawn or revoked if, among other things, the arrestee has two prior convictions for driving while intoxicated. Tex. Transp. Code Ann. §§ 724.011(a), .012(b)(3)(B) (West 2011). However, the court of criminal appeals has held that "[the] explicit refusal to submit to blood testing overrides the existence of any implied consent" and that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *Villarreal*, 475

9

## B. Appellant's Arguments

In his point, Appellant argues that both *McNeely* and *Villarreal* required the State to procure a warrant for the blood draw. *McNeely*, 133 S. Ct. at 1556, 1558; *Villarreal*, 475 S.W.3d at 815. The court in *Villarreal* held that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violate[d] the Fourth Amendment." *Villarreal*, 475 S.W.3d at 815. The Court in *McNeely* held that the natural metabolization of alcohol in the bloodstream did not present a *per se* exigent circumstance justifying an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases. *McNeely*, 133 S. Ct. at 1556, 1558. Appellant concludes that the trial court should have granted his motion to suppress, his conviction should be reversed, and his case should be remanded to the trial court for a new trial without the illegally-seized evidence.

---

S.W.3d at 800; *see State v. Molden*, 484 S.W.3d 602, 608 (Tex. App.—Austin 2016, pet. ref'd).

10

## C. State's Arguments

In contrast, the State continues to argue on appeal that the warrantless blood draw was valid on the basis of exigent circumstances. The State also argues the good faith exception.[6] We disagree.

### i. Good Faith Exception

The State contends that Sergeant West acted in good faith reliance on section 724.012(b) because he followed a mandatory statutory procedure that had not yet been held unconstitutional. We agree that Sergeant West acted in good faith. However, there is no good faith exception under Texas law for reliance on a statute later held to be unconstitutional or not applicable.

The Texas exclusionary rule is found in article 38.23 of the Texas Code of Criminal Procedure, which provides that evidence may not be used or admitted in

---

[6]At the time the State filed its brief on April 17, 2015, it was aware that the Texas Court of Criminal Appeals had granted the State's motion for rehearing in *Villarreal*. Accordingly, the State continued to argue that the original opinion in *Villarreal* was wrongly decided and, therefore, pursued several arguments that were still being litigated in *Villarreal*, such as the validity of the mandatory blood draw statute itself and implied consent. However, on December 16, 2015, the Texas Court of Criminal Appeals denied the motion for rehearing in *Villarreal* as improvidently granted. *Villarreal*, 475 S.W.3d at 817. Implied consent does not apply where, as here, the defendant withdraws his consent. *See id.* at 799–805. The special needs doctrine does not apply. *Id.* at 805–07. The "less intrusive means" test does not save the statute. *Id.* at 811 (stating that no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). Accordingly, we rely on *Villarreal* to dispose of those portions of the State's brief and focus exclusively on the State's exigent circumstances and good faith arguments. *Villarreal* was not an exigent circumstances case. *Id.* at 797. *Villarreal* did not address the good faith exception.

the criminal trial against the defendant if the evidence is obtained by "an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]" Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005); *see State v. Anderson*, 445 S.W.3d 895, 912–13 (Tex. App.—Beaumont 2014, no pet.). The only exception is when the officer relies in good faith upon a warrant issued by a neutral magistrate based upon probable cause. Tex. Code Crim. Proc. Ann. art. 38.23(b); *see Anderson*, 445 S.W.3d at 912.

Unlike the Texas statutory exclusionary rule, the judicially-created federal exclusionary rule has at least three good faith exceptions. *See Anderson*, 445 S.W.3d at 912 (citing *Davis v. United States*, 564 U.S. 229, 237–40, 131 S. Ct. 2419, 2427–28 (2011), and *Douds v. State*, 434 S.W.3d 842, 861 (Tex. App.—Houston [14th Dist.] 2014) (mem. op.), *rev'd on other grounds*, 472 S.W.3d 670, 677 (Tex. Crim. App. 2015) (holding suppression error not preserved), *cert. denied*, 136 S. Ct. 1461 (2016)). Under the federal exclusionary rule, for example, when a law enforcement officer relies in good faith on a statute authorizing a warrantless search, and the statute is later found to be unconstitutional, the exclusionary rule does not bar the government from using the evidence it obtained. *See id.* (citing *Illinois v. Krull*, 480 U.S. 340, 342, 349–50, 107 S. Ct. 1160, 1167 (1987)). When the search was conducted in good faith reliance upon binding appellate precedent that is later overturned, the federal court may apply the good faith exception to limit the exclusionary rule. *See id.*

12

(citing *Davis*, 131 S. Ct. at 2427–28.) Finally, when an officer conducts a search in good faith reliance on a warrant that is later determined to have been improperly issued, federal courts have applied the good faith exception. *See id.* (citing *Krull*, 480 U.S. at 342, 107 S. Ct. at 1163).

The federal exclusionary rules apply to the Texas statutory exclusionary rule only if they are consistent with the plain language of article 38.23. *See id.* The Texas Court of Criminal Appeals has previously rejected efforts to broaden the good faith exception using federal precedent. *See id.* Because this case does not involve an officer's reliance upon a warrant, the good faith exception under article 38.23(b) does not apply. *See* Tex. Code Crim. Proc. Ann. art. 38.23(b). Because this case involves a warrantless search in violation of the Fourth Amendment, the exclusionary rule under article 38.23(a) applies. *Id.* art. 38.23(a); *see also Green v. State*, No. 02-14-00182-CR, 2016 WL 438391 at *2 (Tex. App.—Fort Worth Feb. 4, 2016, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 02-13-00416-CR, 2015 WL 1119966, at *2 (Tex. App.—Fort Worth Mar. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Burks*, 454 S.W.3d at 709). Accordingly, because the State relies upon Sergeant West's good faith reliance on the statute, an exception recognized under the federal exclusionary rules but not recognized under article 38.23, we hold that the State's good faith argument fails.

### ii. Exigent Circumstances

The State argued at the suppression hearing and in its appellate brief that, under the totality of the circumstances, exigent circumstances in addition to the rate of dissipation of alcohol from the body existed to support the warrantless blood draw. But Sergeant West admitted that he did not explore his ability to obtain a warrant under the circumstances and instead acted only in reliance upon section 724.012. *See Green*, 2016 WL 438391, at *3. He made no attempt to ascertain whether he could employ other resources; instead, he relied only upon section 724.012, which at the time—before the *Villarreal* decision—was understandable. *Id.*

Sergeant West said that it was not a no-refusal weekend, that Lake Worth magistrates were not available, and that they used Fort Worth municipal magistrates to review the warrants. The no-refusal weekend appeared to be the exception, and the use of the Fort Worth municipal magistrates appeared to be the standard procedure. In other words, nothing about the situation presented him with something out of the ordinary.

Sergeant West said that on January 4, 2013, there were three officers on duty and that, although the police department tried to have four officers, three officers were typical. Once again, there was nothing out of the ordinary occurring simply because three officers were on duty.

Sergeant West explained that two officers were usually involved in obtaining and executing a blood draw search warrant. The State argued that this

14

meant that in the event some other incident occurred, the third officer would have to act without an assist officer. There was, however, no evidence that any other incident or circumstance occurred that night requiring an assist officer.

On cross-examination, Sergeant West acknowledged that to obtain a search warrant, he had a computer form that he filled out and that he could have filled out the search warrant form in his car by checking boxes and adding a couple of lines of explanation before traveling to the police department, but he chose not to do so. Sergeant West explained that his car did not have a printer, so he would have had to go back to the station anyway to print out the form. Once printed, he had to fax the form to the magistrate in the City of Fort Worth. Sergeant West did not dispute that he could have gotten a search warrant on January 4, 2013. He also acknowledged that a person had the right under the statute to refuse consent and, further, that persons refusing consent could lose their driving privileges for a short time as a penalty for refusing consent.

The police may not create their own exigency to make a warrantless arrest or search. *See Parker v. State*, 206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006). Exigent circumstances do not meet Fourth Amendment standards if the government deliberately creates them. *Id.* Here, the police department knew it was not a no-refusal weekend, knew that no Lake Worth magistrates were available, and knew it would have to rely on Fort Worth municipal magistrates but still had only three officers on duty at night, which Sergeant West described as typical. As noted earlier, there was no evidence that an incident occurred that

15

night which would have forced Sergeant West to choose between having an officer abandon the watch at the fax machine and having an officer proceed with an incident without a backup. Even if the police department was short-handed, the police department was aware of the problem and tolerated it. Deliberately scheduling an insufficient number of patrol officers on an evening shift does not constitute exigent circumstances. *See State v. McClendon*, No. 02-15-00019-CR, 2016 WL 742018, at *3 (Tex. App.—Fort Worth Feb. 25, 2016, no pet.) (mem. op., not designated for publication). Moreover, the small size of a police department for a small municipality cannot constitute an exigent circumstance excusing failure to obtain a warrant for the simple and obvious reason that the vast majority of municipalities outlying major cities—such as Lake Worth—as well as countless other small municipalities scattered across Texas have access to modern technologies that attenuate the handicaps that small police forces might otherwise encounter. *See McNeely*, 133 S. Ct. at 1561–63 (acknowledging that technological innovations and standard-form applications help to streamline the warrant process and expressing concerns about approaches that potentially discourage jurisdictions from pursuing progressive means of acquiring warrants that meet the legitimate interests of law enforcement while preserving the protections afforded by warrants). Even if a magistrate had been available in Lake Worth, Sergeant West still would have needed time to fill out the search warrant form and print it. In either case, thanks to the fax machine, Sergeant West could present his request for a search warrant instantly instead of having to

16

drive to Fort Worth. One officer still would have been needed to transport Appellant to a medical facility. And one officer would have had to wait for the search warrant while Appellant was being transported to JPS Hospital by the other officer—whether that wait occurred beside a fax machine or outside a courtroom made no difference. Thanks again to the fax machine, once the police department had the search warrant, it could fax it directly to the hospital instead of having to drive it there. The unknown variable was the length of time it would take a magistrate in Fort Worth to actually get to Sergeant West's request for a search warrant and fax back a valid search warrant. The crux of the State's argument is that obtaining a search warrant—any search warrant—would have tied up two officers and deprived the Lake Worth police force of a backup officer in the event one was needed. However, being understaffed was not an emergency; just the opposite, being understaffed was routine. There was no evidence that the absence of a fourth officer was the product of budget restraints; just the opposite, Sergeant West said the department sought to "run four officers" but three officers on duty at night was "typical." The State's arguments regarding the small size of the police force are not persuasive.

The State argues that the rate of dissipation constituted exigent circumstances. There was no testimony offered at the suppression hearing regarding the dissipation rate. There was no testimony regarding the State's ability, using dissipation rates, to successfully or unsuccessfully reconstruct an alcohol level at the time of the arrest based upon the level at the time of the

17

draw. The blood draw without a warrant took approximately one hour. Obtaining the same blood draw pursuant to a warrant would have taken approximately two to three hours. There was no evidence regarding the significance of adding an additional hour or two. The State had the burden of showing exigent circumstances. It failed to do so. Consequently, the State's argument is not persuasive. *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *McClendon*, 2016 WL 742018, at *3.

Finally, the State argues that the severity of the underlying offense—felony DWI—shows exigent circumstances. Although the nature of the underlying crime is an important factor, it is not a sufficient factor in and of itself to create an exigency. *See Welsh v. Wisconsin*, 466 U.S. 740, 751–53, 104 S. Ct. 2091, 2098–99 (1984); *McClendon*, 2016 WL 742018, at *4; *State v. Taylor*, No. 02-14-00456-CR, 2015 WL 4504806, at *2–3 (Tex. App.—Fort Worth July 23, 2015, pet. ref'd) (mem. op., not designated for publication). The commission of a felony offense, standing alone, does not trump the Fourth Amendment.

Considering the totality of the circumstances, including the fact that the Lake Worth police department was a small department, the dissipation rate of the alcohol in Appellant's blood, and the seriousness of the offense—taken together, the State failed to meet its burden to show any exigent circumstances justifying the failure to obtain a warrant. There was no evidence that understaffing of the Lake Worth police force was an emergency, there was no evidence that an actual emergency arose that would have required a fourth officer, there was no

18

evidence regarding how any anticipated delay in procuring a search warrant would have jeopardized the State's ability to retrospectively reconstruct Appellant's blood alcohol content at the time of his arrest, and the fact that Appellant's offense may have been a felony was not sufficient to justify the warrantless search. *See Welsh*, 466 U.S. at 751–53, 104 S. Ct. at 2098–99.

### iii. Conclusion Regarding Error

Sergeant West's reliance on the mandatory blood draw statute did not insulate the blood draw from the requirements of the Fourth Amendment. *See Villarreal*, 475 S.W.3d at 815. Because the State presented no evidence showing that the search fell within any of the recognized exceptions to the warrant requirement, we hold that the warrantless blood draw violated the Fourth Amendment and that the trial court erred by denying Appellant's motion to suppress. *See id.* at 813–14; *see also Amador*, 221 S.W.3d at 673 (holding that appellate courts review de novo trial court's ruling when its ruling does not turn on the credibility and demeanor of the witnesses).

### D. Harm Analysis

Having concluded that the blood draw violated the Fourth Amendment, we must next perform a harmless error review and reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See* Tex. R. App. P. 44.2(a). Neither Appellant's brief nor the State's brief argues harm. There is no reporter's record of the plea hearing, so we cannot determine if the results of the blood draw were

19

ever admitted into evidence. Appellant's plea of guilty alone was not sufficient to convict him. *See* Tex. Code Crim. Proc. Ann. art. 1.15 (West 2005); *Baggett v. State*, 342 S.W.3d 172, 174 (Tex. App.—Texarkana 2011, no pet.). His written confession, which is part of our record, would be sufficient. *See Baggett*, 342 S.W.3d at 174. The procedural posture of the case and the parties' respective positions and arguments show that Appellant wanted to proceed free of the results of the blood draw and that he pled guilty only after the trial court denied his motion to suppress; therefore, we cannot conclude beyond a reasonable doubt that the trial court's error did not contribute to Appellant's decision to plead guilty. *See Roop v. State*, 484 S.W.3d 594, 602 (Tex. App.—Austin 2016, pet. ref'd). Accordingly, we hold that the error was harmful.

### E. Summary

We hold that the collection of Appellant's blood specimen without his consent and without a warrant violated the Fourth Amendment. We further hold that the trial court erred in denying Appellant's motion to suppress, and because we cannot determine beyond a reasonable doubt that this error did not harm Appellant, we hold that the error was harmful. Accordingly, we sustain Appellant's point.

### IV. Conclusion

Having sustained Appellant's point, we reverse the trial court's judgment and remand this case for a new trial consistent with this opinion.

20

/s/ Anne Gardner<br>
ANNE GARDNER<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER, J.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED:  June 30, 2016