**Reverse and Remand; Opinion Filed December 9, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00080-CR

**DIEGO ISAIAH HORTA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F18-47058-K**

## MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle[1]
Opinion by Justice Carlyle

After the trial court denied appellant Diego Isaiah Horta's pretrial motion to suppress evidence, he entered an open plea of guilty to possession of a controlled substance, psilocin, in an amount of 4 grams or more but less than 400 grams. The trial court placed him on ten years' deferred adjudication community supervision and certified his right to appeal the denial of his suppression motion.

In his sole issue on appeal, Mr. Horta asserts the trial court erred by denying his motion to suppress because the evidence was derived from an illegal detention. We reverse and remand in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

---

[1] Justice Carlyle has substituted on the submission panel and has reviewed the briefs and record in this case.

In his motion to suppress, Mr. Horta contended the evidence in this case was seized after police subjected him to an investigative detention without reasonable suspicion. He asserted (1) "[b]ut-for the initial illegal detention of Defendant, none of this evidence would have been discovered," and (2) "[b]ecause the evidence seized by the police in this case is derived from the illegal detention of Defendant, all evidence should be suppressed under the fruit-of-the-poisonous-tree doctrine."

At the hearing on the suppression motion, Rowlett police officer Evan Clark testified that while on patrol at approximately 9:28 p.m. on February 27, 2018, he saw a 1996 Ford Aerostar van parked in an otherwise empty parking lot at Pecan Grove Park, which is open daily until 11:00 p.m. The parking lot was (1) adjacent to Rowlett Community Center and a water park, both of which were closed, and (2) within 1,000 feet of Rowlett High School, which was separated from the parking lot by a field and fence. The van was in a parking space facing the park's trails and playground. Officer Clark stated "there was heavy fog" that evening and he "found it odd that anyone would want to go to the park at that time." He stated, "During briefing that day, we were advised that there would be two games going on at the high school, a soccer game and a basketball game . . . . And I knew that that particular area was known for—after closing hours was known for drug activities sometimes and sexual acts and suspicious activity in the area."

He "pulled in behind" the van and "radioed dispatch there was a suspicious vehicle." According to Officer Clark, "The suspicious part was that . . . both businesses were closed. There's heavy fog so—and it was dark. So playing at that child's park, seemed to me a little bit suspicious. . . . Plus the soccer game and all the people in the parking lot, less than 1,000 feet away."

Officer Clark got out of his squad car and walked up to the van's driver-side window. He saw seventeen-year-old Mr. Horta "sitting there with his hands on the steering wheel." The driver-

side window would not "roll down," so Officer Clark opened the driver-side door to talk with Mr. Horta. Officer Clark stated Mr. Horta "was polite" and told him he "was there to hang out and talk to his friend on the phone." When asked for identification, Mr. Horta gave Officer Clark his name, address, and date of birth. He told Officer Clark he had his driver's license with him but was unable to find the wallet containing his license in the van at that time. The van was "pretty much a mess" and contained "a lot of stuff." Officer Clark stated Mr. Horta told him he "likes to keep cool things in his vehicle and show his friends." As Mr. Horta moved items around in the front-seat area looking for his wallet, Officer Clark saw a "Michael Myers mask from the Halloween scary movie" and a "crowbar" inside the van.

Officer Clark returned to his squad car to "run [Mr. Horta's] information," but "it didn't bounce back with any information." At that point, Officer Clark "pull[ed] up even closer" to Mr. Horta's van. Officer Clark asked Mr. Horta to get out of the van and he did so. A second officer arrived and, through the van's back window, saw a rifle inside the van. The officers searched Mr. Horta's van and found, among other things, psilocin, a controlled substance derived from mushrooms.[2]

During the suppression hearing, video recordings from Officer Clark's body camera and dashboard camera were admitted into evidence. The videos showed Mr. Horta's van facing forward in a marked parking space with its front wheels next to a curb and sidewalk bordering the park. Officer Clark parked his marked squad car about one car-length behind Mr. Horta's van, with the squad car's headlights illuminating the van. Leaving the headlights on, Officer Clark approached the van's closed driver-side window and shined a flashlight into the van and on Mr. Horta. Through the closed window, Officer Clark stated in quick succession: "How're you doing,"

---

[2] The indictment originally included an enhancement paragraph alleging Mr. Horta used or exhibited a firearm during the commission of the possession-of-a-controlled-substance offense. Prior to Mr. Horta's plea, the State filed a motion to strike the deadly-weapon enhancement paragraph, which the trial court granted.

"Mind rolling down your window," "Mind if I open the door," "Okay." Officer Clark opened the van's front door, then stated, "Everything all right?" He continued shining the flashlight into the van and stood directly next to Mr. Horta, who remained in the driver's seat with his hands on the steering wheel. Officer Clark identified himself and stated, "I'm just trying to figure out what's going on." Mr. Horta responded he was intending to talk to a friend on his phone and perhaps go for a walk. Then, Officer Clark stated, "Mind if I see your ID?"

A few minutes later, Officer Clark walked back to his squad car. After sitting in his squad car for about a minute with the headlights still on, he moved the squad car closer to the van. When the second officer arrived, the officers asked Mr. Horta to get out of the van, then searched the van and arrested him.

During closing argument at the suppression hearing, counsel for Mr. Horta stated "[B]ecause he pulls in behind [Mr. Horta]—and approaches, our position is that any reasonable person . . . He's not reasonably going to feel free to discontinue the conversation. And moreover, Officer Clark then says roll down the window. . . Open the door. Starts talking with him. He's got the light. He's shining it around." The State argued this was a "voluntary encounter" and "the Fourth Amendment is not triggered when the officer[s] merely approach a person in a public place and ask without demanding cooperation a few questions."

**Denial of motion to suppress**

"The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). Police and citizens may engage in three types of interactions: consensual encounters, investigative detentions, and arrests. *State v. Woodard*, 341 S.W.3d 404, 411–12 (Tex. Crim. App. 2011). "Consensual police–citizen encounters do not implicate Fourth Amendment protections." *Id*. at 411. Investigative

detentions and arrests are Fourth Amendment seizures and therefore implicate Fourth Amendment protections. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).

An investigative detention "occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013). To determine whether an interaction between a police officer and a citizen rises to the level of an investigative detention, courts focus on whether "the officer conveyed a message that compliance with the officer's request was required." *Crain v. State*, 315 S.W.3d 43, 51 (Tex. Crim. App. 2010); *see State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) ("It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer . . . communicate the message of 'We Who Must Be Obeyed.'"). No bright-line rule dictates when a consensual encounter becomes a detention. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). Courts must examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore the officer's request or to terminate the encounter. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667; *Crain*, 315 S.W.3d at 49; *see Garcia-Cantu*, 253 S.W.3d at 244 ("The officer's conduct is the primary focus, but time, place, and attendant circumstances matter as well."). The test to determine whether a person has been detained is objective and thus does not rely on the subjective belief of the detainee or the police. *Furr*, 499 S.W.3d at 878; *Wade*, 422 S.W.3d at 668.

A police officer has reasonable suspicion if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App.

2005). "This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop." *Brodnex*, 485 S.W.3d at 437. But the officer must have "more than an inarticulable hunch or mere good-faith suspicion." *Id*.; *see also Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994) (en banc) ("Even in the absence of bad faith, detention based on a mere hunch is illegal. There must be a 'reasonable suspicion' by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime."). A determination of reasonable suspicion is made by considering the totality of the circumstances. *Brodnex*, 485 S.W.3d at 437.

"In reviewing a trial court's ruling on a motion to suppress, appellate courts must view the evidence in the light most favorable to the trial court's ruling." *Garcia-Cantu*, 253 S.W.3d at 241. When, as here, the trial court does not make explicit findings of fact, "the appellate court infers the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied fact findings." *Id*.; *see also Matthews v. State*, 431 S.W.3d 596, 601 n.5 (Tex. Crim. App. 2014) (stating prevailing party on motion to suppress "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it"). Suppression motions are reviewed pursuant to a bifurcated standard under which "[t]he trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo." *Kerwick*, 393 S.W.3d at 273. "[W]hether the facts surrounding [an] officer and appellant's interaction constitute a consensual police–citizen encounter or a Fourth Amendment detention is subject to de novo review." *Johnson*, 414 S.W.3d at 192.

Here, Mr. Horta asserts the trial court erred by denying his motion to suppress because the evidence "conclusively establishes" this was not a consensual encounter, but instead began as an investigative detention without reasonable suspicion and escalated to an arrest. According to Mr. Horta, (1) "[n]o reasonable person, in Horta's position when Officer Clark pulled in behind Horta's car, in an otherwise empty parking lot, and illuminated Horta's car, would have felt free to turn their car on, do a three-point turn, and drive away," and (2) "it would have been impossible for Horta to have safely backed away from Officer Clark once Officer Clark got to Horta's car and stood next to the driver's side door." In his appellate reply brief, Mr. Horta contends *Johnson* illustrates that the interaction between him and Officer Clark "was an investigative detention from the very beginning." He also argues there was no reasonable suspicion for his initial detention because "Officer Clark's explanation of the reasons why he stopped [Mr. Horta] makes plain that he did not have underlying information that supported anything more than an inarticulable hunch."

The State argues the trial court properly denied the motion to suppress because the evidence shows the "initial interaction" between Officer Clark and Mr. Horta was a consensual encounter. According to the State, (1) Officer Clark "parked to the rear of the van with his vehicle's headlights illuminated, but he did not activate his lights or siren, block the van in, or do anything aggressive"; (2) Officer Clark "then asked Appellant if he minded opening the door, and Appellant agreed to open the door"; and (3) Mr. Horta was not faced with "the threatening presence of several officers," "the display of a weapon by an officer," "any physical touching of his person," or "the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

Further, the State asserts Mr. Horta's subsequent detention was lawful because Officer Clark "formed a reasonable suspicion that Appellant was, had been, or soon would be engaged in criminal activity" based on the following circumstances: (1) Mr. Horta "was parked in an isolated

area in the parking lot of a closed recreation center"; (2) "[a]ll of the businesses around the recreation center were also closed"; (3) "[t]he area was known for drug activity, sexual acts, and suspicious activity"; (4) "[t]he parking lot was a short distance from a high school where Rowlett police officers had been advised activities were taking place"; (5) "[t]he night was foggy, leading to low visibility"; (6) Mr. Horta "was unable to produce photo identification"; (7) Officer Clark "was unable to verify Appellant's identify based on the information provided by Appellant"; and (8) Mr. Horta "had a mask and a crowbar in the front seat of his van."

In *Johnson*, police were dispatched to an apartment complex at approximately 11 p.m. after a 911 caller reported a "suspicious person"—an unidentified black male who was "sitting on the steps watching cars." *Id*. at 186. The officer (1) approached appellant's car, which was backed into a parking space at the complex with its lights on and engine running; (2) parked his police vehicle at an angle that "at least partially blocked appellant's egress" but did not prevent appellant from "maneuvering" around the officer and driving away; (3) shined his police vehicle's "spotlight" toward appellant's car throughout the encounter; and (4) in a "loud authoritative voice,"[3] asked "What's going on, what are you doing out here?" and requested appellant's identification. *Id*. at 193. The encounter resulted in a search of appellant's car in which police found a mask, a "stun gun," and a controlled substance, marijuana. The trial court denied appellant's motion to suppress, concluding a detention had occurred but was justified by reasonable suspicion. *See id*. at 186. The court of appeals affirmed based on a conclusion that no detention occurred. *Id*.

The court of criminal appeals reversed the court of appeals, concluding the facts showed an investigative detention because under the totality of the circumstances "a reasonable person would not have felt free to leave or decline the officer's requests." *Id*. at 193. The CCA stated:

---

[3] The evidence in *Johnson* did not include a video recording. The officer in that case testified he spoke to appellant "us[ing] a loud authoritative voice maybe. I said a loud voice so I could hear him. I was far away. I had to use an outside voice."

> While none of these circumstances individually would necessarily lead to an inescapable conclusion that the person was detained, under the totality of these circumstances, we conclude that appellant was indeed detained—perhaps when the officer shined a bright light on him in his car, but certainly when the officer blocked appellant's car such that appellant would have had to "maneuver" his car from its parking place if he wished to terminate the interaction—thus implicating Fourth Amendment protections.

*Id*. at 194. The CCA remanded the case to the court of appeals for consideration of the trial court's determination that the officer had reasonable suspicion to detain appellant. *Id*.

Here, as in *Johnson*, whether the facts surrounding the initial interaction constituted a consensual police–citizen encounter or an investigative detention is subject to de novo review. *See id.* at 192. Though we defer to the trial court regarding "evaluation of credibility and demeanor," that type of evaluation is not involved here because the video recordings of the interaction do not conflict with Officer Clark's testimony. The videos show that Mr. Horta would have had to back up in order to leave the scene. Due to Officer Clark's squad car being parked one car-length behind his vehicle, Mr. Horta could not have left without backing toward the squad car and "maneuvering" to avoid it. The squad car's headlights were on and aimed at Mr. Horta's van throughout the encounter. Officer Clark (1) shined his flashlight into Mr. Horta's van and on him and (2) spoke loudly enough to be heard through the closed window. There are also facts here not present in *Johnson*: Officer Clark opened the car door and stood directly next to Mr. Horta with the door open, continuing to shine the flashlight into the van as he questioned him about why he was at the park.

When determining if an interaction crosses the threshold from a consensual encounter to an investigative detention, "the court focuses on whether the officer conveyed a message that compliance with the officer's request was required." *Crain*, 315 S.W.3d at 49. Under the totality of the circumstances in this case, we conclude a reasonable person would not have felt free to leave or terminate the initial interaction. *See Johnson*, 414 S.W.3d at 193. Thus, the initial interaction,

from Officer Clark's approach to his initial questioning of Mr. Horta about why he was at the park, was a detention rather than a consensual encounter. *See id.*

As to reasonable suspicion, the State does not explain, and the record does not show, how the totality of the circumstances justified the initial interaction. The circumstances at the time of the initial interaction included (1) it was 9:28 p.m.; (2) though the park was open until 11 p.m., the community center and water park adjacent to the parking lot were closed; (3) there was "heavy fog"; (4) several sporting events were scheduled that evening at the high school within 1,000 feet of the park; and (5) "that particular area was known for—after closing hours was known for drug activities sometimes and sexual acts and suspicious activity in the area." Texas case law demonstrates those circumstances do not support reasonable suspicion. *See Brodnex*, 485 S.W.3d at 437–38 (concluding no reasonable suspicion existed where only facts were (1) appellant was seen walking at 2 a.m., (2) area was known for "narcotic activity," and (3) officer believed, based on what other officers had told him, that appellant was known criminal); *Crain*, 315 S.W.3d at 53 ("Neither time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of reasonable suspicion."); *Klare v. State*, 76 S.W.3d 68, 73–76 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("A lawful stop must be based on more than a vehicle's suspicious location or time of day."). We conclude the record, viewed in the light most favorable to the trial court's ruling, does not reflect sufficient specific, articulable facts from which Officer Clark could have reasonably concluded that Mr. Horta was, had been, or soon would be engaged in criminal activity. *See Brodnex*, 485 S.W.3d at 437; *Klare*, 76 S.W.3d at 73–76; *Jones v. State*, 926 S.W.2d 386, 389 (Tex. App.—Fort Worth 1996, pet. ref'd) (concluding no reasonable suspicion existed to detain appellant seen in his truck in public park at 10:45 p.m. in dark area that had in past "been used by people smoking marijuana,

minors drinking alcohol, and people having sex"). Consequently, the trial court erred by denying Mr. Horta's motion to suppress.

Having found error, we must conduct a harm analysis to determine whether the error calls for the judgment's reversal. TEX. R. APP. P. 44.2. Because this was constitutional error, we must reverse the trial court's resulting judgment unless we determine beyond a reasonable doubt that the denial of the motion to suppress did not contribute to Mr. Horta's decision to plead guilty. *See id.*; *Bonsignore v. State*, 497 S.W.3d 563, 573 (Tex. App.—Fort Worth 2016, pet. ref'd). We do not focus on the propriety of the outcome, but instead calculate as much as possible the error's probable impact in light of the other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

The search in which police seized a controlled substance from Mr. Horta's van was conducted after Mr. Horta was detained without reasonable suspicion. Mr. Horta pleaded guilty only after the trial court denied his motion to suppress, indicating the trial court's denial was a factor in his decision to plead guilty. As such, we cannot determine the denial did not contribute to Mr. Horta's decision to plead guilty. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010) (op. on reh'g); *Bonsignore*, 497 S.W.3d at 573.

We decide Mr. Horta's issue in his favor. We reverse the trial court's order denying Mr. Horta's motion to suppress, reverse the trial court's subsequent judgment, and remand this case to the trial court for further proceedings consistent with this opinion.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190080F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

DIEGO ISAIAH HORTA, Appellant

No. 05-19-00080-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F18-47058-K.
Opinion delivered by Justice Carlyle.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, we **REVERSE** the trial court's order denying appellant's motion to suppress, **REVERSE** the trial court's judgment, and **REMAND** the cause for further proceedings consistent with this Court's opinion.

Judgment entered this 9th day of December, 2019.