**Opinion issued April 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00773-CR

———————————

**LYNDON ANSIL FEARS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR1877**

---

## O P I N I O N

Following the trial court's denial of his motion to suppress evidence of his blood sample, appellant pleaded guilty to driving while intoxicated ("DWI") with two prior convictions, and the trial court assessed his punishment at ten years'

confinement. In his sole issue, appellant argues that the trial court erred in denying his motion to suppress.

We reverse and remand.

## Background

At 11:02 p.m., appellant was stopped for speeding by an officer with the Hitchcock Police Department. That officer noted several signs of intoxication, such as the smell of alcohol and appellant's slurred speech, and requested assistance from the Texas Department of Public Safety ("DPS") for a possible DWI suspect. Trooper M. Guerra, with the DPS, arrived on the scene at approximately 11:27 p.m. and conducted field sobriety testing, which appellant failed. Appellant was arrested for DWI, and, after he refused to give a breath specimen, he was subjected to a warrantless blood draw.

At trial, appellant moved to suppress the evidence from the blood draw. He argued that there was no statutory or other justification for obtaining his blood sample without a warrant. He also argued specifically that there were no exigent circumstances in his case that justified the taking of a warrantless blood sample.

Trooper Guerra testified that the Hitchcock Police Department, located in Galveston County, was "a smaller department [with] less manpower" and that he did not believe all of its officers were certified to administer field sobriety tests. Trooper

2

Guerra testified that it took him approximately fifteen to twenty minutes to drive to the location where appellant was stopped.

Trooper Guerra testified that, when he arrived on the scene, appellant was handcuffed and waiting in the back of the patrol car. He stated that appellant had "become belligerent" and had had to be placed in handcuffs "for officer safety." Trooper Guerra testified that he performed the horizontal gaze nystagmus ("HGN") test, and appellant demonstrated all six clues of intoxication. Trooper Guerra attempted to administer the walk-and-turn test and the one-leg-stand test, but the ground was too gravelly to allow appellant to complete the tests. Based on the HGN test and his own observations of appellant's behavior, Trooper Guerra arrested appellant for DWI.

Trooper Guerra testified that, upon being placed under arrest, appellant became "very verbally abusive" and that he "was one of the more belligerent people I've had to arrest." He testified that appellant's extreme belligerence affected his investigation, causing him to be more cautious and slowing down the investigation. Trooper Guerra transported appellant to the Hitchcock police station, read him statutory warnings, and requested a sample of his breath, which appellant refused. He also discovered that appellant had at least two prior DWI convictions, which he testified obligated him to collect a blood sample. Trooper Guerra transported appellant to Mainland Medical Center where the blood draw was done at 12:15 a.m.

3

Appellant continued to be "uncooperative" and "verbally abusive," and he had to be restrained so that the blood sample could be taken.

Trooper Guerra also testified regarding the warrant process. He testified that during a "no-refusal" weekend a district attorney, judge, and nurse are all on call to process DWI suspects, and it can take "upwards of an hour to two hours" to complete the warrant process. However, appellant was not arrested during a no-refusal weekend. Trooper Guerra also testified that, on one occasion, he had sought a search warrant for a blood sample in a DWI case during business hours on a week day, and the entire process took approximately three hours. He testified that, at the time of appellant's arrest, the district attorney's office was closed, but there was an assistant district attorney on call. He also testified that there was no judge on call. Due to these factors, Trooper Guerra believed that it "would have taken considerably longer than three hours" to complete the warrant process in appellant's case.

Assistant District Attorney James Haugh testified at the suppression hearing regarding DWI investigations and the process for obtaining a search warrant. He testified that the first step is for the officer to complete the probable cause affidavit and that the amount of time it takes to complete this step "varies a lot." Haugh testified that it can take forty-five minutes to an hour, or even longer, depending on the officer. After he receives the affidavit from the officer, he reviews it and discusses any necessary changes with the police officer. His own review usually

4

takes between thirty and forty minutes. Haugh testified that he would then have to find a judge who could review the affidavit and sign a search warrant. Haugh stated that Galveston County does not have a judge on call and that he would have to use a list of judges' phone numbers and call until he found one who was available. Once a judge has been located, Haugh informs the police officer of the judge's location, and the officer takes the necessary documents to the judge for review.

Haugh testified that no-refusal weekends happen several times each year, but that during the rest of the year, there is no procedure to expedite the search-warrant process. He stated that there is no electronic system allowing the department to scan the search warrant and e-mail it to a judge. He also testified that his office's policy was not to procure search warrants unless there was an accident or someone was hurt.

The trial court denied appellant's motion to suppress, finding that "exigent circumstances existed which made the warrantless blood draw reasonable." In separate findings of fact and conclusions of law, the trial court found specifically that appellant "was extremely belligerent and this belligerence slowed down the DWI investigation because Trooper Guerra had to act with extra caution." The trial court also cited Trooper Guerra's testimony that it would have taken "considerably longer than three hours" to obtain a warrant for appellant's blood specimen. The trial court concluded that exigent circumstances existed because, "based on the facts, it

would take an excessive amount of time to obtain a search warrant during which time evidence would be destroyed." Appellant subsequently pleaded guilty to the DWI offense, and the trial court assessed his punishment at ten years' confinement.

**Motion to Suppress**

Appellant argues that the trial court erred in denying his motion to suppress because the police did not obtain a warrant prior to collecting his blood sample and there was no evidence of exigent circumstances or other justification for the warrantless blood draw.

**A.    Standard of Review**

We review a ruling on a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's ruling on a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose

to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). The taking of a blood specimen is a search and seizure under the Fourth Amendment. *McNeely*, 133 S. Ct. at 1558; *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966).

The Fourth Amendment requires that a search of a person as part of a criminal investigation be conducted pursuant to a search warrant or a recognized exception to the warrant requirement and that it be reasonable under the totality of the circumstances. *McNeely*, 133 S. Ct. at 1558, 1563; *see also Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967) (holding that warrantless search or seizure is per se unreasonable unless it falls under recognized exception to warrant requirement).

One well-recognized exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S. Ct. at 1558 (quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S.

7

Ct. 1849, 1856 (2011)). "A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search," including entering a home to provide emergency assistance to an occupant, engaging in hot pursuit of a fleeing suspect, or entering a burning building to put out a fire and investigate its cause. *Id.* at 1558–59. The Supreme Court has also recognized "that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id.* at 1559.

We must look to the "totality of circumstances" to determine whether a law enforcement officer faced an emergency that justified acting without a warrant. *Gutierrez v. State*, 221 S.W.3d 680, 686–87 (Tex. Crim. App. 2007). Specifically, to validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process. *Id.* at 685. First, probable cause to search must exist— that is, "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene [that] would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found." *Id.* Second, the State must establish the existence of an exigent circumstance justifying the warrantless search. *Id.* Without establishing probable cause and exigent circumstances, a warrantless search will not stand. *Id.* at 685–86; *see also Schmerber*, 384 U.S. at 768, 771, 86 S. Ct. at 1834, 1836 (holding that warrantless seizure of blood sample can be constitutionally permissible if officers have probable cause to arrest suspect,

8

exigent circumstances exist, and reasonable method of extraction is available, such as venipuncture by appropriate individual).

## B.     Analysis

It is undisputed that the police did not obtain a warrant prior to taking appellant's blood sample, and appellant does not challenge the existence of probable cause. Rather, appellant argues that the State failed to establish the existence of exigent circumstances sufficient to justify its failure to obtain a warrant. Appellant argues that Trooper Guerra did not attempt to contact a judge or ascertain if one was available, and he argues that Trooper Guerra's and Haugh's testimony about warrant procedures was not particularized to the facts of this case and does not support the trial court's finding of exigent circumstances. Appellant also argues that "[t]he evidence does not support [a]ppellant's non-cooperation as an exigent circumstance." We agree with appellant.

Looking to the totality of the circumstances of this case, we observe that no accident or complicated investigation occurred. Although Trooper Guerra testified, and the trial court found, that appellant's arrest happened late in the evening when there was no judge on call to issue a search warrant, Haugh also testified that there were approximately thirteen magistrate judges in Galveston County who could have signed a warrant. Trooper Guerra testified that he did not attempt to obtain a warrant because, based on one previous experience, it had taken three hours to obtain a

search warrant, and he believed it would take "considerably longer" to obtain a warrant for appellant. He also testified that appellant "was one of the more belligerent people [he had] had to arrest" and that appellant's conduct delayed and slowed down his investigation. However, the evidence also indicated that appellant's blood was drawn forty-five minutes after Trooper Guerra first arrived at the scene of appellant's arrest, and Trooper Guerra admitted he did not try to obtain a warrant to have appellant's blood drawn in those forty-five minutes.

Haugh testified generally regarding the process for obtaining a warrant when no judge was on call, as was the case on the night appellant was arrested. He also testified that there were no procedures that could have expedited that process and that Galveston County did not have any means to transfer the required documents between the judge and the police electronically. However, Haugh was not consulted regarding appellant's case, and he presented no testimony specific to the circumstances surrounding appellant's case.

We conclude that neither the potential delay required to obtain a warrant from one of thirteen magistrate judges in the county nor appellant's belligerence created an emergency that justified the State's acting without a warrant. *See Gutierrez*, 221 S.W.3d at 685. In *McNeely*, the Supreme Court recognized a variety of circumstances that may give rise to an exigency sufficient to justify conducting a warrantless search, including entering a home to provide emergency assistance,

10

engaging in hot pursuit of a fleeing suspect, entering a burning building to put out a fire and investigate its cause, or taking actions to prevent the imminent destruction of evidence. 133 S. Ct. at 1558–59. The State failed to demonstrate the existence of any such emergency or imminent destruction of evidence in this case.

This case is similar to the circumstances in *Gore v. State*, in which this Court held that the State did not establish the existence of exigent circumstances. 451 S.W.3d 182, 197–98 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). In *Gore*, the arresting officer did not testify regarding why he felt he did not have time to get a warrant, and instead, "the record [made] clear that he did not believe he needed a warrant." *Id.* at 197. Here, Trooper Guerra likewise testified that he did not believe he needed a warrant, and his only testimony regarding why he felt he did not have time to obtain one was based on one previous experience when it had taken him three hours to obtain a warrant.

Likewise, in *Gore*, an assistant district attorney testified generally regarding the length of time involved in obtaining a warrant, but there was "no evidence of whether that would have been true in this particular case." *Id.* Here, Haugh testified generally about the procedures for obtaining a warrant, but he offered no testimony regarding appellant's particular case and acknowledged that he was not the attorney on call the night appellant was arrested. Thus, neither Trooper Guerra's nor Haugh's testimony demonstrated "the practical problems of obtaining a warrant within a

11

timeframe that still preserves the opportunity to obtain reliable evidence" as it related to the totality of the circumstances in appellant's case. *See McNeely*, 133 S. Ct. at 1568.

And, as we observed in *Gore*, to accept general testimony "that it usually takes two or three hours to get a warrant as sufficient evidence of exigency in every DWI case would be to create a *per se* exigency rule, which *McNeely* expressly prohibits." *See* 451 S.W.3d at 197. Here, as in *Gore*, nothing in the record explains why officers did not have time to obtain a warrant when "BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner," thus making it "likely that the BAC evidence would have nonetheless been available" even if it took three hours to obtain the warrant. *See id.* (quoting *McNeely*, 133 S. Ct. at 1561).

After implying all findings of historical facts in favor of the trial court's ruling, we conclude that the State failed to show the existence of an exigent circumstance justifying police action without obtaining a warrant.

We further conclude that the trial court's erroneous denial of appellant's motion to suppress evidence of his blood alcohol level obtained in violation of the Fourth Amendment contributed to his decision to plead guilty and to his subsequent punishment. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009) (applying Rule 44.2 and concluding that trial court's erroneous ruling "contributed

in some measure to the State's leverage in the plea bargaining process"); *Gore*, 451 S.W.3d at 198; *see also* TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

We sustain appellant's sole issue on appeal.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish.  TEX. R. APP. P. 47.2(b).