Kenneth Benjamin COLURA, Appellant

v.

The STATE of Texas, Appellee

NO. 01–15–01013–CR

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued December 29, 2016

Carmen Roe, Houston, TX, for Appellant.

Jeri Yenne, District Attorney—Brazoria County, Michelle R. Townsend, Assistant District Attorney, Brazoria County, Angleton, TX, for State.

Panel consists of Justices Bland, Massengale, and Lloyd.

## OPINION

Jane Bland, Justice

Kenneth Benjamin Colura was charged with driving while intoxicated—felony enhanced. A jury found him guilty, and the trial court assessed a probated sentence of ten years, requiring 280 community-service hours and other conditions, and suspended Colura's driver's license for two years.

On appeal, Colura contends that the trial court committed harmful error in denying his motion to suppress the results of a warrantless blood draw. We reverse and remand.

### Background

Close to midnight one evening in August 2010, Colura was stopped by Lake Jackson Police Officer J. Lynn for driving in a manner that suggested he was intoxicated. Colura made rapid multi-lane changes, pulled up quickly to two stop lights, and revved his engine and squealed his truck's tires suggesting that he was going to race. After stopping Colura, Lynn noticed that Colura had slurred speech and glassy, bloodshot eyes. Lynn asked Colura if everything was okay and if he could see Colura's driver's license and proof of insurance. Standing about 10 to 12 inches from Colura, Lynn could smell alcohol on Colura's breath. Lynn also observed that Colura appeared to stumble, then caught himself and braced himself on the truck to regain his balance. Lynn asked Colura to

step to the rear of the truck. He noticed that Colura's coordination was off and his feet were "kind of shuffling," and that Colura was holding onto the truck's bedrail and balancing himself by placing his hand on the side of the truck as he walked toward the tailgate.

Lynn told Colura that he smelled alcohol, and he asked him whether he had anything to drink. Colura admitted to having consumed six beers. Colura voluntarily submitted to the first part of field sobriety testing, a horizontal gaze nystagmus (HGN) examination. Colura displayed all six clues during the HGN examination, which showed further indication of intoxication. He refused to complete the two remaining tests. Lynn then read the statutory warning to Colura, informing him that he would be placed in custody for suspicion of driving while intoxicated and requesting a voluntary blood sample. Colura refused to submit to a voluntary blood draw.

The wrecker arrived within 15 minutes. Lynn transported Colura to a hospital about a quarter of a mile away, where his blood was drawn involuntarily without a warrant. The officer decided to obtain the involuntary blood draw because Colura had at least two prior DWI convictions. Lynn testified that he did not believe that a warrant was necessary under the circumstances. He admitted that his offense report did not mention any exigent circumstances; he had no witnesses to interview and nothing else would have caused an unusual delay in securing a warrant.

Lynn testified that he was working that evening to fill in for officers who were out sick. The shift was short-handed that night, staffed by four officers instead of the usual six or seven. One officer had stopped and assisted him with an inventory of Colura's truck and waited with him for the tow truck, but this officer was called away to assist with another call and did not go to the hospital with Lynn.

Lynn knew the procedures available for obtaining a search warrant. Because it was late at night, an officer or other law enforcement person would have to call the judge and explain the situation and then go to the judge's residence to obtain a signature on the warrant. Lynn acknowledged that he knew that an assistant district attorney was on call that night who could have helped him prepare an affidavit and a warrant and contact the judge. He did not contact the assistant district attorney on call. He recalled an instance after this night when he had to obtain a warrant in which the process on that occasion took about two-and-a-half to three hours.

The State stipulated that Colura's blood was drawn without his actual consent and without a warrant.

## Suppression of Evidence

### I. Preservation of Error

■ The State contends that Colura waived his appellate complaints because he untimely urged his motion to suppress and failed to obtain a timely ruling on it. We disagree. The trial court held a pre-trial evidentiary hearing on Colura's motion. The record does not contain a written order on the motion to suppress, but it does contain a letter from the trial court to the parties indicating that it decided to deny the motion and setting forth the findings of fact and conclusions of law underlying that decision. Colura moved for reconsideration, supplementing his original arguments with legal authority issued during the intervening year. The trial court heard that motion during a status conference and denied it in a written order dated approximately a week before the first day of trial.

■ "[A] pretrial motion to suppress evidence is 'nothing more than a special-

ized objection to the admissibility of that evidence.'" *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012) (quoting *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981)). To preserve a claim of error in the admission or exclusion of evidence for appeal, "the record must show that appellant made a timely request, objection, or motion, and that the trial court ruled on it." *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004) (citing Tex. R. App. P. 33.1(a)(1)). The purposes behind the requirement of a timely, specific objection are (1) to inform the judge of the basis of the objection and give him the chance to make a ruling on it, and (2) to give opposing counsel the chance to remove the objection or provide other testimony. *Id.*

The record shows that, through his motion to suppress and his motion to reconsider, Colura made timely and specific objections to support exclusion of the blood draw evidence. Unlike in *Garza*, where the trial court expressly deferred its ruling, the trial court in this case definitively ruled on the suppression issue before trial and did not manifest any intent to carry the motion to suppress with trial. *See* 126 S.W.3d at 81, 84. We hold that Colura preserved the issues raised in his motion to suppress for appellate review.

## II. Standard of Review

We apply a bifurcated standard to review a trial court's ruling on a motion to suppress. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Rodriguez v. State*, 469 S.W.3d 626, 630 (Tex. App.– Houston [1st Dist.] 2015, pet. ref'd). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's findings of historical facts if the record supports them. *Ford*, 158 S.W.3d at

493. We review de novo the trial court's application of law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

## III. Warrant Requirement

The taking of a blood sample is a search that triggers the protection of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966). The Fourth Amendment's text does not specify the circumstances in which an officer must obtain a search warrant. Subject to only a few exceptions, though, searches conducted outside the judicial process are unreasonable as a matter of law. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). These exceptions include circumstances in which (1) the citizen provides voluntary consent to search: (2) exigent circumstances justify the search; and (3) the officer performs the search incident to an arrest. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). The State bears the burden to show that a warrantless search falls within one of these exceptions. *Id.* Here, the underlying facts do not fit the third exception. In its response to Colura's motion, the State argued only a variant of the first exception— implied consent—and asked the court to apply a good-faith exemption from the warrant requirement. In the evidentiary hearing, however, the State—conceding

that it had not argued for application of the exigent-circumstances exception in its written response—raised that exception. The State pointed to evidence, adduced at the hearing, of the reduced number of officers on the shift that night, claiming that the short-staffing constituted an exigent circumstance that justified the warrantless blood draw.

### A. Implied consent and good-faith mistake

In the trial court, the State contended that it was entitled to obtain the blood sample based on a theory of implied consent pursuant to section 724.012 of the Texas Transportation Code, the mandatory blood draw statute, and on a good-faith exception akin to the federal rule, because no court had yet held that the mandatory blood draw provision of section 724.012(b) did not avoid the warrant requirement.

The Court of Criminal Appeals and this court have squarely rejected the first urged ground and refused to find implied consent under circumstances like those here, where the defendant refused to submit to a blood draw. *See State v. Villarreal*, 475 S.W.3d 784, 799–800, 804 (Tex. Crim. App. 2015) (on reh'g) ("[I]mplied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires."); *see also McGuire v. State*, 493 S.W.3d 177, 193, 198–99 (Tex. App.–Houston [1st Dist.] 2016, pet. ref'd) (following *Villarreal*); *Gore v. State*, 451 S.W.3d 182, 190–91, 198 (Tex. App.–Houston [1st Dist.] 2014, pet. ref'd) (declining to construe section 724.012(b) as creating independent exception to Fourth Amendment's warrant requirement or as mandating a blood draw without warrant, and holding that State did not meet its burden to show consent). This court also has refused to recognize a good-faith exception to the warrant requirement. *See State v. Tercero*, 467 S.W.3d 1, 10 (Tex. App.–Houston [1st Dist.] 2016, pet. ref'd).

### B. Exigent circumstances

Colura contends that the trial court erred in denying his motion to suppress because the State failed to meet its burden to show exigent circumstances justified the warrantless blood draw. Courts assess whether the exigency exception to the warrant requirement applies to an involuntary blood test in a DWI case on a case-by-case basis. *Gore*, 451 S.W.3d at 194 (citing *Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 1555, 185 L.Ed.2d 696 (2013)).

"The exigency exception operates 'when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *Weems v. State*, 493 S.W.3d 574, 578 & n.23 (Tex. Crim. App. 2016) (quoting *McNeely*, 133 S.Ct. at 1558). We look to the "totality of circumstances" to determine whether a law enforcement officer faced an emergency that justified acting without a warrant. *Gutierrez v. State*, 221 S.W.3d 680 686–87 (Tex. Crim. App. 2007); *Fears v. State*, 491 S.W.3d 884, 888 (Tex. App.–Houston [1st Dist.] 2016, pet. ref'd).

The State must satisfy a two-step process to validate a warrantless search based on exigent circumstances. *Gutierrez*, 221 S.W.3d at 685. First, the State must demonstrate that it had probable cause to search—that is, "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene [that] would lead a man of reasonable prudence to believe that the instrumentality ... or evidence of a crime will be found." *Id.* Second, the State must establish that exigent circumstances justified the warrantless search. *Id.* "An exigent circum-

stances analysis requires an objective evaluation of the facts reasonably available to the officer at the time of the search." *Cole v. State*, 490 S.W.3d 918, 923 & n.24 (Tex. Crim. App. 2016) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 1948, 164 L.Ed.2d 650 (2006)). Relevant circumstances in the context of a warrantless blood draw include the procedures in place for obtaining a warrant, the availability of a magistrate judge, and the practical problems of obtaining a warrant within a reasonable time frame that still preserves the opportunity to obtain reliable evidence, given the "inherent evanescence" of blood-alcohol content resulting from natural metabolic processes. *McNeely*, 133 S.Ct. at 1563; *Cole*, 490 S.W.3d at 924.

The State relies on the Texas Court of Criminal Appeals' recent decision in *Cole* to support application of the exigent circumstances exception in this case. In *Cole*, the Court held that exigent circumstances justified a warrantless blood draw following a fatal collision, where the defendant was found injured and admitted to consuming methamphetamine. 490 S.W.3d at 920. The collision occurred at a busy intersection in Longview, and the high-speed impact caused a fire punctuated by a series of explosions, as well as a block-long debris field. *Id.* Law enforcement and public safety concerns necessitated as many officers as were available to assist in blockading and diverting traffic from the area and in investigating the scene. *Id.* The need for increased manpower coincided with a shift change, which complicated the staffing issue. *Id.* The lead investigator testified that the 14 officers present at the scene—nearly half of the minimum amount of officers the Longview Police Department requires for the entire city over two shifts—were performing important law-enforcement or public-safety duties, and the record did not show there was an officer who was readily available to procure the warrant at the time. *Id.* at 926.

Further, the defendant in Cole had complained of "pain all over." Cole told EMS that he had taken "some meth," and the officer observed that, consistent with methamphetamine intoxication, Cole had involuntary jerking and incoherent speech. *Id.* at 920. The lead investigator testified that, during the time it would take to obtain a warrant, Cole was likely to receive treatment for his pain, possibly including narcotic medication, which would taint any blood sample. *Id.* at 927. The Court concluded that the totality of the circumstances justified the warrantless blood draw under the exigent circumstances exception. *Id.*

Unlike the circumstances in *Cole*, the record here does not show that an officer was unavailable to assist Officer Lynn or that intervening medical care could compromise the effort to establish alcohol in the bloodstream. The officer who initially assisted Lynn was called away, but there was no showing that Lynn requested backup or that other officers on shift were not available. Further, Lynn testified that a district attorney was on call for assistance in obtaining a warrant after hours, but Lynn did not attempt to contact that person. Rather, the record is clear that Lynn did not explore avenues for taking a warrant because he was under the mistaken impression that one was not required for a blood draw that was authorized by statute.

We agree with Colura that this case is more like *Gore*, in which this court held that exigent circumstances did not exist to excuse a warrantless blood draw. 451 S.W.3d at 197–98. There, the two officers present at Gore's arrest failed to offer any explanation for their failure to obtain a warrant. *Id.* One officer testified that he believed the process to get a warrant

would take two to three hours, but the court found that permitting exigency based merely on an officer's explanation of the time to get the warrant would create the type of "per se exigency rule" expressly prohibited by *McNeely*. *Id.* at 197. The *Gore* court further reasoned that, even if it had taken three hours to obtain the warrant, a blood test taken at that time would have been valid because of the predictable way in which alcohol dissipates from the body. *Id.*; *see Fears*, 491 S.W.3d at 889 (likening facts before it to those in *Gore* and rejecting as basis for exigency exception officer's testimony that, based on one previous experience, it would have taken him three hours to obtain warrant).

Likewise here, the record does not contain any explanation for the failure to obtain a warrant or that any anticipated delay would have jeopardized the ability to obtain evidence of intoxication. *See Cole*, 490 S.W.3d at 926–27 (discussing availability of retrograde analysis and citing *McNeely*, 133 S.Ct. at 1568). We therefore hold that the State failed to bear its burden to show that securing a warrant before obtaining the blood draw from Colura would have been too difficult, time-consuming, or labor-intensive under the circumstances.

None of the grounds urged by the State supports admission of the blood draw evidence. We therefore hold that the trial court erred in denying Colura's motion to suppress.

### IV. Reversible Error

■■■■ Because the admission of the blood draw evidence violated Colura's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Perez v. State*, 464 S.W.3d 34, 47

(Tex. App.–Houston [1st Dist.] 2015, pet. ref'd). This analysis focuses not on any perceived accuracy of the conviction or punishment, but on the error itself, in the context of the whole trial, to determine the likelihood that the error corrupted the fact-finding process, affected the integrity of the process leading to the conviction, or prejudiced the jury's decision-making. *Friend v. State*, 473 S.W.3d 470, 482 (Tex. App.–Houston [1st Dist.] 2015, pet. ref'd) (citing *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011)).

■■■■ The Penal Code's definition of intoxication provides two methods of proof: either through evidence of impairment or through evidence of blood alcohol content of .08 or more. *Navarro v. State*, 469 S.W.3d 687, 694 (Tex. App.–Houston [14th Dist.] 2015, pet ref'd); *see Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Indicia of intoxication include any "evidence that would logically raise an inference that the defendant was intoxicated" including erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, and any admissions by the defendant concerning about how much he had been drinking. *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010).

Officer Lynn testified that he observed Colura making rapid multi-lane changes, pulling up to stop lights at a high rate of speed, and engaging in behavior that looked like street racing. Colura admitted to having six beers, his eyes were glassy and bloodshot, his breath smelled of alcohol, and he had coordination and balance problems. Officer Lynn thus proffered evidence of intoxication that supports Colura's conviction.

The State did not have a video of Colura's encounter with Lynn, which occurred five years before the trial took place. Lynn testified that Colura submitted only to the HGN test in the field; Colura was not asked to perform any testing later at the police station where it could have been captured on video.

During the trial and closing argument, the State relied heavily on the blood draw evidence, discussing the integrity of the sample, its collection, and its testing. The State told the jury that a blood test is "the highest level of evidence" it can provide, and it highlighted that the alcohol concentration in the sample was three times the legal limit.

The jury instruction incorporates both alternative methods for proving intoxication. The jury's questions during deliberations, however, show a focus on the blood draw evidence. The jury sent out three questions and requests, all pertaining to the blood sample. On this record, we cannot say beyond a reasonable doubt that the erroneously admitted blood draw evidence did not contribute to Colura's conviction.

### Conclusion

We reverse the trial court's judgment of conviction and remand the case for new trial.