

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00418-CR

---

EVAN MICHAEL WALKER                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY
TRIAL COURT NO. 1450478

----------

## MEMORANDUM OPINION[1]

----------

Appellant Evan Michael Walker appeals his conviction for driving while intoxicated (DWI).[2]  In two points, he argues that the evidence is insufficient to support the conviction and that the trial court abused its discretion by overruling his objection to the admission of an exhibit that showed the results of a test of his

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2017).

blood for alcohol. We hold that the evidence is sufficient to support the conviction and that Walker forfeited his complaint about the exhibit's admission. We therefore affirm the trial court's judgment.

**Background Facts**

One night in February 2016, Walker went to a hotel in Southlake and asked to speak to an employee named Aaron, who no longer worked there. Walker was muttering, heavily sweating, and had a disheveled appearance. To hotel staff, he appeared to be intoxicated. After spending some time in a restaurant within the hotel, Walker began shouting. He repeatedly said, "I want my f-ing money" and then ran out of the hotel. He got into a car and drove away at a high speed while squealing his tires. A manager at the hotel called 9-1-1. She described Walker's vehicle and said that he was driving erratically.

Brian Fitzgerald, a Southlake police officer, located Walker's car and saw him "roll through a stop sign." Officer Fitzgerald initiated a traffic stop. Other officers arrived on the scene. During Officer Fitzgerald's initial conversation with Walker, before Officer Fitzgerald checked to see whether Walker had outstanding warrants, Walker appeared to be lucid, and Officer Fitzgerald did not smell alcohol.

Officer Brandon Lewis, however, immediately smelled alcohol when he approached Walker's driver's side window. Walker told Officer Lewis that he had drunk one margarita or one martini that evening; Officer Lewis found it odd that Walker could not remember which drink he had consumed. Officer Lewis asked

2

Walker to step out of his vehicle and to take three standardized field sobriety tests. According to Officer Lewis, Walker showed signs of intoxication on the horizontal-gaze-nystagmus test,[3] on the walk-and-turn test,[4] and on the one-leg-stand test. Officer Lewis concluded that Walker was intoxicated and arrested him for DWI.

Walker vacillated on whether he would consent to giving a sample of his blood, so Officer Lewis obtained a search warrant to get the sample. After drawing the sample with a nurse's assistance, the Southlake police sent the sample to the Tarrant County Medical Examiner's office. A forensic toxicologist tested the sample. The test showed that Walker had an alcohol (specifically, ethanol) concentration of 0.1.

The State charged Walker with DWI. He pleaded not guilty to a jury. After receiving the parties' evidence and arguments and deliberating for approximately ten minutes, the jury convicted Walker. Based on an agreement between the parties, the trial court assessed his punishment at ninety days' confinement but suspended imposition of the sentence and placed him on community supervision. He appeals.

---

[3]During this test, Officer Lewis told Walker to follow a light with his eyes only, but Walker repeatedly turned his head to follow the light.

[4]The video from Walker's walk-and-turn test shows him swaying and reaching toward the pavement to steady himself. Also, although Officer Lewis repeatedly told Walker to take nine steps forward and nine steps back, Walker took ten steps forward before turning and walking back.

**Evidentiary Sufficiency**

In his first point, Walker argues that the evidence is insufficient to support his conviction.[5]  In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).   This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016).   Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.  *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).  Instead, we determine whether the necessary inferences are reasonable based upon the

---

[5]In the body of his brief, Walker attempts to raise a factual sufficiency argument.   The Texas Court of Criminal Appeals has eliminated factual sufficiency reviews of evidence supporting elements of criminal offenses that the State must prove beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

4

cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

A person commits DWI if the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). "Intoxicated" means not having the normal use of mental or physical faculties because of the introduction of a substance into the body or having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2) (West 2011).

In his brief, Walker succinctly argues, "The State did not show that . . . Walker was under the influence of any drug or alcohol." But the jury heard evidence that on the night of his arrest, Walker appeared to be intoxicated to hotel staff while sweating, muttering, and shouting; that he drove away from the hotel erratically; that he admitted to the police that he had been drinking alcohol that night; that he smelled like alcohol when detained; that he failed standardized field sobriety tests; and that a sample of his blood tested for a 0.1 alcohol concentration. From these facts, the jury could have rationally found that Walker was intoxicated while driving. *See* Tex. Penal Code Ann. §§ 49.01(2), .04(a); *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (stating that blood-

5

alcohol content test results are "highly probative" of intoxication); *Colura v. State*, 510 S.W.3d 218, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (explaining that indicia of intoxication include erratic driving, "mumbling words," and inability to perform sobriety tests); *Newberry v. State*, No. 03-14-00560-CR, 2016 WL 4091296, at *3 (Tex. App.—Austin July 27, 2016, no pet.) (mem. op., not designated for publication) (relying on the defendant's erratic driving, his sweatiness, his odor of alcohol, and his poor performance on standardized field sobriety tests to sustain a DWI conviction).

We acknowledge that the jury received evidence that it could have weighed against a finding of Walker's guilt. For example, as mentioned above, when Officer Fitzgerald approached Walker, he did not smell alcohol and believed that Walker was lucid. On a dash camera recording from a patrol car, Officer Fitzgerald can be heard saying that Walker "seem[ed] fine" and that based on his initial interaction with Walker before running a warrants check, Walker did not appear to need standardized field sobriety tests. On that recording after the initial interaction, Officer Fitzgerald described Walker as "cool" and "quiet." When another officer asked Officer Fitzgerald whether Walker appeared to be intoxicated, Officer Fitzgerald responded, "When I talked with him, no." Officer Fitzgerald also believed that Walker had completed the walk-and-turn test "just fine." Finally, Officer Lewis conceded at trial that Walker showed only one clue of intoxication on the one-leg-stand test, which meant that he technically passed the test although Officer Lewis still counted it as a failure.

While these facts may have created inferences against Walker's guilt, we must defer to the jury's implicit resolution in favor of the conflicting inferences that support his guilt. *Murray*, 457 S.W.3d at 448. In an evidentiary sufficiency review, we may not act as a thirteenth juror. *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016). Viewing all of the evidence in the light most favorable to the jury's finding of guilt, we conclude that a rational factfinder could have found the essential elements of DWI beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599; *see also* Tex. Penal Code Ann. § 49.04(a). We overrule Walker's first point.

**Admission of Evidence**

In his second point, Walker argues that the trial court abused its discretion by admitting State's Exhibit 13, a one-page toxicology report from his blood test. The exhibit stated that Walker's blood tested positive for ethanol at a concentration of 0.1.

The State offered Exhibit 13 during the testimony of Dr. Robert Johnson, the chief toxicologist for the Tarrant County Medical Examiner's Office. The following colloquy provides context to the admission of the exhibit:

> [THE STATE:] I'm showing you what's been marked as State's Exhibit 13 and what's been admitted for the record at this moment. Do you recognize this exhibit?
>
> A. I do, yes.
>
> Q. And what is this?
>
> A. It is a tox report from our laboratory.

7

Q. And is this a toxicology report for who?

A. Mr. Evan Walker.

Q. And does it state when the testing was done?

A. The report doesn't say when it was done. It says the date that I approved it.

Q. What was that date?

A. March 14th of this year.

Q. And how do you know that this particular report identifies and belongs to a particular individual?

A. The subject's name is on the report. And then we have three different case numbers that can all be tied back to the individual.

Q. And do you know or have you verified these case numbers do tie back to the individual on the report?

A. Yes. The case number on the report matches the submitted case number from Southlake.

[THE STATE]: And, at this time, the State moves to introduce State's Exhibit 13 and tenders to Defense for inspection.

[DEFENSE COUNSEL]: We object, Your Honor. 403 and, just, unfairly prejudicial based on the delay and timing of the test.

THE COURT: It's overruled. It's admitted.

. . . .

Q. (By Mr. Tipton) Dr. Johnson, do you know what the results were for ethanol in this defendant?

A. I do, yes.

Q. And what were the results?

A. We found .1 -- 0.1 grams per 100 milliliters of ethanol.

8

Q. And in the course of your training, have you also learned about the physical effects of controlled substances and alcohol on the body?

A. I have, yes.

Q. And what kind of training and education have you received on the subject?

A. Well, for ethanol specifically, it's the most widely studied drug we've ever known. There are thousands of publications on ethanol dating back almost a hundred years now, entire courses dedicated only to the subject of ethanol pharmacology and toxicology.

On appeal, Walker contends that Texas Rule of Evidence 403 precluded the exhibit's admission. *See* Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). The State argues, in part, that Walker forfeited his complaint because although he objected to the exhibit's admission, he failed to make a running objection or to object to testimony about the exhibit's contents. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely objection that states the specific grounds for the desired ruling if they are not apparent from the context of the objection. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Furthermore, the preservation rule requires a party to object each time objectionable evidence is offered unless the party has

9

obtained a running objection or has requested a hearing outside the presence of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas applies the "futility rule," meaning that despite a trial court's ruling that evidence is admissible, a party must keep making futile objections on pain of waiver). Unobjected-to testimony about objected-to evidence results in forfeiture of the objection. *See Clay v. State*, 361 S.W.3d 762, 767 (Tex. App.—Fort Worth 2012, no pet.) ("[B]ecause Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude that he forfeited his objection to the records' admission." (footnote omitted)); *see also Jones v. State*, No. 06-15-00119-CR, 2016 WL 3197397, at *5 (Tex. App.—Texarkana June 9, 2016, no pet.) (mem. op., not designated for publication) ("Smuts testified about the results of the DNA laboratory report. Therefore, we find that Jones waived his . . . complaints regarding the admission of the DNA report.").

As the above record excerpt shows, although Walker objected to the admission of the toxicology report, he did not object to testimony describing the contents of the report. Thus, based on the authority cited above, we hold that he forfeited his objection to the report's admission. *See Leday*, 983 S.W.2d at 718; *Clay*, 361 S.W.3d at 767. We overrule his second point.

## Conclusion

Having overruled Walker's points, we affirm the trial court's judgment.


/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE


PANEL: MEIER, GABRIEL, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 1, 2018