

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00327-CR
No. 07-17-00328-CR

AMADO R. MIRANDA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2005-410,183; Honorable John J. "Trey" McClendon III, Presiding

October 17, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Amado R. Miranda, appeals from his conviction by a jury of two counts of indecency with a child by contact[1] and the court-imposed sentence of twelve years of imprisonment.[2] Appellant challenges his conviction through several issues. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019). An offense under this subsection is a felony of the second degree. *Id.* at § 21.11(d).

[2] TEX. PENAL CODE ANN. § 12.33 (West 2019) (a second-degree felony is punishable by imprisonment for any term of not more than 20 years or less than 2 years and a fine not to exceed $10,000).

**BACKGROUND**

Appellant does not challenge the sufficiency of the evidence to support his convictions. Accordingly, we will discuss only the facts pertinent to disposition of his appellate issues. TEX. R. APP. P. 47.1.

Appellant was indicted for four counts of indecency with a child by contact. The State elected to proceed to trial on only two of those counts. Prior to trial, Appellant filed a motion to suppress his confession. As grounds for his motion, Appellant contended his confession was involuntary and violated his due process rights under the Texas and Federal Constitutions because the confession was the product of police coercion from "various statements, threats, and promises which violated [his] free will . . . ." He argued also that the detective who interviewed him used his "personal tragedies to coerce a confession." Further, Appellant argued that the translator who assisted the detective and Appellant communicate did not properly translate the questions and responses, leaving Appellant confused and unable to understand the questions being asked.

The court heard the recorded statement from Appellant and also reviewed two transcripts of the interview. It also heard Appellant's testimony. After the trial court heard the evidence presented, it denied Appellant's motion to suppress and the matter proceeded to a jury trial. During trial, Appellant re-urged his motion to suppress his statement. The court denied the re-urged motion and entered findings of fact and conclusions of law in which it found Appellant's confession was freely and voluntarily made and found Appellant was not in custody when he gave his confession.

**ISSUES ONE AND TWO—ADMISSIBILITY OF APPELLANT'S CONFESSION**

In Appellant's first two issues, he contends his statement to police was involuntary and thus, inadmissible. We disagree and overrule the issues.

**VOLUNTARINESS OF CONFESSION**

We review a ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citation omitted). In so doing, we view the facts in the light most favorable to the trial court's decision*. Crain,* 315 S.W.3d at 48 (citation omitted). We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law to those facts. *Id.* (citation omitted). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *Fears v. State,* 491 S.W.3d 884, 887 (Tex. App. Houston [1st Dist.] 2016, pet. ref'd) (citing *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007)). The trial court may choose to believe or disbelieve all or any part of a witness's testimony. *Id.* (citation omitted). Furthermore, we will sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Id.* (citing *Laney v. State,* 117 S.W.3d 854, 857 (Tex. Crim. App. 2003)).

Several sources of law are relevant to Appellant's first two appellate issues: (1) the *Miranda* rule; (2) the Texas confession statute; and (3) the right to be free from police coercion under the Due Process Clause of the Fourteenth Amendment to the Constitution. *Lopez v. State,* No. 13-13-00307-CR, 2015 Tex. App. LEXIS 6561, at *10-11 (Tex. App.—Corpus Christi June 25, 2015, pet. ref'd) (mem. op., not designated for

publication) (citations omitted).  First, *Miranda* safeguards the Fifth Amendment right against self-incrimination in the context of custodial interrogations by requiring that a person subject to police questioning receive the following warnings:  "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)).

Second, Texas statutory law requires that in order for an accused's statement to be used against him at trial, the statement must be "freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed."  TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005).  The Texas confession statute implements *Miranda* by requiring, among other things, that the accused's statement be either written or recorded and that the written or recorded statement contain a reading of the *Miranda* warnings, along with the accused's waiver thereof.  TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018).

Third, the Due Process Clause of the Fourteenth Amendment requires that an accused's statement be voluntary and not the product of police coercion.  *Lopez,* 2015 Tex. App. LEXIS 6561, at *10-11 (citing *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985)).  A confession may be involuntary under the Due Process Clause only where there is police overreaching.  *Oursburn v. State,* 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).

The Court of Criminal Appeals has noted that under articles 38.21 and 38.22, fact scenarios that can raise a state-law claim of involuntariness, even though they do not raise a federal constitutional claim, may include the following:  "(1) the suspect was ill and

4

on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have 'knowingly, intelligently and voluntarily' waived his rights; (3) the suspect 'lacked the mental capacity to understand his rights'; (4) the suspect was intoxicated, and he 'did not know what he was signing and thought it was an accident report'; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into 'for questioning by several persons armed "with six-shooters."'" *Oursbourn,* 259 S.W.3d at 172-73 (citations omitted). The potential "involuntary" fact scenarios encompassed by articles 38.21 and 38.22 are "broader in scope than those covered by the Due Process Clause or *Miranda."* *Id.*

To determine whether the circumstances render an accused's statement coerced and involuntary, courts look at whether his will was "overborne" by police coercion. *Lopez,* 2015 Tex. App. LEXIS 6561, at *10-11 (citation omitted). Courts look to the totality of the circumstances surrounding the statement in making this determination. *Id.* (citations omitted). Relevant circumstances include the "length of detention, incommunicado or prolonged detention, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family member, and physical brutality." *Id.* (citation omitted). When the issue is raised, the State must prove voluntariness by a preponderance of the evidence. *Id.* (citing *Juarez v. State,* 409 S.W.3d 156 (Tex. App.—Houston [1st Dist.] 2013 pet. ref'd)).

*Miranda* applies only to use of statements obtained from a suspect during a police-initiated "custodial interrogation." *Estrada v. State,* 313 S.W.3d 274, 294 (Tex. Crim. App. 2010) (citing *Miranda,* 384 U.S. at 444). In determining "whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but

the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) (internal quotes omitted); *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). *See also Ervin v. State,* 333 S.W.3d 187 (Tex. App.—Houston [1st Dist.] Aug. 11, 2010, pet. ref'd).

On appeal, Appellant contends the totality of the circumstances shows his confession was not voluntary. He first argues that the "linguistic confusion and vague questioning" of him by an uncertified translator raised "serious doubts" as to the voluntariness of his statement. He argues that he did not accurately understand the detective's questions and was frustrated by the translator's inability to communicate what Appellant was trying to tell the detective. He contends he did not understand and did not know what he confessed to doing. This, he says, deprived him of due process of law. He also asserts that the detective engaged in coercive police misconduct because he promised to let Appellant be with his wife who had been recently diagnosed with invasive cancer, because he threatened Appellant with arrest regardless of whether he confessed, and because he told Appellant the interview would not end until he admitted to something more than a "misinterpretation" of the events that led to the accusation that he was indecent with a child.

As part of his argument, Appellant complains of the hour-and-a-half he had to wait prior to the beginning of the interview and the two-hour long interrogation. He argues that the lengthy wait time, coupled with the lack of *Miranda* warnings, and the coercive nature of the questioning showed he was in custody for the purposes of *Miranda.*

This case is similar to the situation in *Estrada,* 313 S.W.3d at 294 in which the Court determined the record supported the trial court's finding that the defendant was not in custody when he provided his first recorded statement to police. There, the Court found that while the interrogation took place at the police station and lasted five hours, the defendant came to the police station voluntarily, police told him several times that he was free to leave, he acknowledged he could have left, and stated several times that he wanted to leave and go home. *Id.* In reaching its conclusion, the Court relied on the opinions in *Oregon v. Mathiason,* 429 U.S. 492, 493-96, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) and *California v. Beheler,* 463 U.S. 1121, 1122-25, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983). In *Mathiason,* the Court noted that a non-custodial situation is not converted into one in which *Miranda* applies solely because the interrogation took place in a "coercive environment." 429 U.S. at 495. It further noted that any interview of a person suspected of a crime by a police officer will have coercive aspects to it, but a police officer is not required to administer the *Miranda* warnings to everyone they question. *Id.* In *Beheler,* the Court concluded the defendant was not in custody when he voluntarily came to the police station on the day of the offense, gave a statement to police after being questioned for thirty minutes and was then allowed to go home. *Beheler,* 463 U.S. at 1122. *See also Courtney v. State,* No. 07-02-0159-CR, 2004 Tex. App. LEXIS 965 (Tex. App.—Amarillo Jan. 30, 2004, pet. ref'd) (mem. op., not designated for publication) (finding questioning was not custodial just because questioning occurs in a police station).

Two separate transcripts were admitted into evidence at the motion to suppress hearing. In addition, an audio recording of the interview was also admitted without objection. Appellant was the only witness that testified at the hearing on the motion to suppress. There, he told the court he voluntarily went to the police station, believing he

7

was going to speak with the detective about payment of property taxes for some land his church purchased. He testified the detective spoke "all in English." He said "a certain amount of time" or "a lot of time" had gone by before someone "who didn't speak Spanish perfectly" came in to help him and the detective communicate.[3]

Appellant said he felt "suppressed" and "felt cornered" during his interview with the detective. He said, "it was a lot of pressure for me." He testified it "was almost like they were obligating me to say what they were asking me" and he "didn't have any other option." He also told the court he "never understood that [he] had rights." He further testified that the detective did not "exactly" make promises to him but said that if Appellant "spoke, that he was going to help me." Appellant also said the detective "did insist. He did keep insisting in his questions." Appellant agreed that the detective promised him that if he told him what he wanted to hear, "he would let [Appellant] return to your family . . . and to your wife." However, Appellant also said the detective "never said, 'I promise you that I'm going to do this,' but it was like they were inducing me that if I collaborated, or cooperated with them, that things would come out okay." Appellant also said he understood that the detective told him that he could not make promises about how Appellant's situation would be handled; however, he would make the people involved aware of his wife's cancer diagnosis.

Appellant was not restrained in any way and he was told at the outset of the interview that he was free to leave. When the translator came in, he said "First of all, I want him to understand that he doesn't have to talk to me." The detective then reiterated that and said, "He can leave at any time . . . ." Appellant told the court that while he

<hr>

[3] On cross-examination, the State asked Appellant if he would be "surprised that actually only about ten minutes had gone by" and Appellant responded, "yes, some time went by."

remembered some of the statements that were made to him, he did not understand he had the right to stay quiet or the right to leave. He admitted he did say, "Si, yes" in response to whether he understood the admonishments he was given. Appellant now insists that he "was just answering yes, no, yes, no, without really understanding . . . what they were trying to tell me." Appellant later said he "possibly understood" that the detective repeatedly told him he would be able to leave "but what I was seeing in their facial expressions, in their movements, is that they were angry with me, or bothered me."

The record does show Appellant waited for approximately an hour-and-a-half before the interview began and that the interview then spanned two hours. The record also shows that Appellant maintained his innocence for a long period before making some equivocal admissions to his actions. The transcript also shows the detective told Appellant, "No matter what you say here to me today, you are leaving my office and going home, I promise you that." However, Appellant said he did not remember being told that.

Further, the record shows the problems the detective had communicating with Appellant and the use of a non-certified translator to help them talk. Appellant said "it was a lot of pressure for me. I don't know if it was because—because of the way they were presenting the matter to me, or the anxiety because I wasn't understanding, and they weren't understanding me." He said, "all I know is that I was struggling with the— the Spanish. It's not like it is now, where we have time to be able to think about the question that's being asked, it was—then it was just a bombardment of questions in English and in Spanish, that's what I'm talking about when—when I talk about mistakes, mistakes that one can commit by not understanding, by not understanding these things, and that is what happened to me." Appellant did answer, "definitely," when asked whether

9

the lack of effective communication that occurred that day resulted in an involuntary statement.

Appellant told the court his statement was "definitely not" voluntary. He testified "[t]his wasn't voluntary. I was coerced to speak." He went on to say that "[o]n various occasions on various questions" he felt forced to say what he said. He then told the court he didn't understand "why this problem is so serious, because I didn't do any kind of— any—any harm to that family. I didn't have any kind of contact. I didn't touch her skin . . . or body." He later protested his innocence again, saying "I never touched [the girl] on her skin or on her body, and she has never touched me. But I'm saying that it was very— it was an insignificant type of touching, like grandparent with a girl, that's all it was." He told the court, "that is the blame that I have in this in that I allowed that [the complainant] touch over on top of my pants, on my—on my intimate places." He maintained that he "really did not understand the question" when he was asked if he touched the girl's vagina for sexual reasons. He said if the question had been asked the way it was asked during the hearing on the motion to suppress, he "probably wouldn't have said yes" but during the interrogation, he understood the detective to be asking about touching like "by hugging."

Reviewing the facts in the light most favorable to the trial court's decision, while recognizing the trial court was the sole trier of fact and the judge of the credibility of Appellant's testimony, the trial court could have reasonably concluded that, while Appellant may have been confused about the criminality of his conduct and the seriousness of the allegations, his statements to the police were not involuntary or coerced. Confusion is not the same thing as coercion and an ill-advised statement is not the same thing as an involuntary statement. Sufficient evidence supports the trial court's

10

conclusion that Appellant's statutory and constitutional rights were not violated in the taking of his statement. Because we do not find an abuse of discretion in the trial court's ruling, we resolve Appellant's first two issues against him.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant argues his counsel rendered ineffective assistance because he failed to object to the admission of his statement under article 38.22 of the Texas Code of Criminal Procedure. While Appellant acknowledges that his counsel did file a motion to suppress his statement on the basis of alleged due process violations, he contends his counsel was ineffective because he did not object to its admission under the more expansive article 38.22.

Both the United States and Texas Constitutions guarantee an accused the right to the effective assistance of counsel. *Rodriguez v. State,* Nos. 07-15-00412-CR, 07-16-00124-CR, 2016 Tex. App. LEXIS 13584, at *3-5 (Tex. App.—Amarillo Dec. 21, 2016, no pet.) (mem. op., not designated for publication) (citing U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Claims of ineffective assistance of counsel are reviewed under the two-pronged analysis articulated in *Strickland. Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)). To show ineffective assistance, a defendant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687-88, 694; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)).

Looking at the issue in hindsight, there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* (citing *Strickland*, 466 U.S. at 689). Appellant's failure to prove both prongs of the *Strickland* test is fatal to his ineffective assistance of counsel claim. *Id.* (citing *Lopez*, 343 S.W.3d at 142).

The "right to effective assistance of counsel merely ensures the right to reasonably effective [not perfect] assistance." *Id.* (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (quoting, with alteration, *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc)). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Id.* (citations omitted). Counsel's performance must be judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *Id.* (citation omitted).

As we discussed in our analysis of Appellant's first two issues, the admission of his statement was not in error under any applicable law, including article 38.22. Consequently, the statement would have been admitted into evidence even if counsel had objected under the basis of article 38.22. Accordingly, we do not find counsel's failure to object to the admission of Appellant's statement to police rendered ineffective assistance. Further, we note counsel actively participated in Appellant's defense by filing a motion to suppress, by being actively engaged at all phases of trial, by engaging in effective cross-examination of witnesses, and by presenting witnesses on Appellant's behalf. Accordingly, we overrule Appellant's final issue.

**CONCLUSION**

Having resolved each of Appellant's issues against him, we affirm the judgments of the trial court.

Patrick A. Pirtle
Justice

Do not publish.